In the Matter of the Transfer Tax upon the Estate of ELIZA ANN PRALL, Deceased.

PROTESTANT EPISCOPAL CHURCH MISSIONARY SOCIETY FOR SEAMEN IN THE CITY AND PORT OF NEW YORK, Appellant; NATHAN L. MILLER, as Comptroller of the State of New York, Respondent.

*Tax — the Protestant Episcopal Church Missionary Society for Seamen in the City and Port of New York is a religious corporation and exempt from the transfer tax.*

The Protestant Episcopal Church Missionary Society for Seamen in the City and Port of New York, which was incorporated under chapter 147 of the Laws of 1844 for the purpose of providing "by building, purchase, hiring or otherwise, so many floating and other churches for seamen at different points in the city and port of New York as they may deem proper, in which churches the seats

shall be free, and to provide suitable clergymen to act as missionaries in the said churches," and which was made subject to all provisions and restrictions contained in the 10th, 11th and 12th sections of the act entitled "An act for the incorporation of religious societies," passed April 5, 1813, and which, by an act amendatory thereof (Laws of 1854, chap. 68), was empowered to procure one or more houses and lots for the boarding, lodging and entertainment of seamen and boatmen in the city and port of New York, is a "religious corporation" within the definition of that term contained in section 2 of the Religious Corporations Law (Laws of 1895, chap. 723), and bequests made to such society are consequently exempt from the payment of the transfer tax by virtue of section 221 of the Tax Law (Laws of 1896, chap. 908, as amd. by Laws of 1901, chap. 458).

LAUGHLIN, J., dissented.

APPEAL by the Protestant Episcopal Church Missionary Society for Seamen in the City and Port of New York from an order of the Surrogate's Court of New York county, entered in said Surrogate's Court on the 20th day of May, 1902, as amended by an order entered in said court on the 3d day of July, 1902, assessing a transfer tax upon a legacy bequeathed by Eliza Ann Prall, deceased, to the appellant.

*Edmund L. Baylies*, for the appellant.

*Edward H. Fallows*, for the respondent.

INGRAHAM, J. :

By the will of the testatrix there was bequeathed to the "Protestant Episcopal Church Missionary Society for Seamen in the City and Port of New York" the sum of $1,000. The surrogate determined that this legacy was subject to a transfer tax, and from that determination this appeal is taken. The testatrix died on the 23d day of March, 1902. By chapter 458 of the Laws of 1901, section 221 of the Tax Law (Laws of 1896, chap. 908) was amended so as to provide : "But any property heretofore or hereafter devised or bequeathed to any person who is a bishop, or to any religious corporation, including corporations organized exclusively for bible or tract purposes, shall be exempted from and not subject to the provisions of this act."

The determination of this question must depend upon the character of the corporation which was intended to take this legacy. If this is a "religious corporation" the legacy is not taxable ; and if

not, the surrogate was correct in imposing the tax. This corporation was incorporated under a special act known as chapter 147 of the Laws of 1844. Section 1 of that act provides that certain persons named, "being members of a missionary society attached to the Protestant Episcopal church in the City of New York, and their successors, are hereby declared to be a body politic and corporate by the name of 'the Protestant Episcopal Church Missionary Society for seamen in the city and port of New York.'" Section 2 of the act provides that "the objects of the said society are declared to be to provide, by building, purchase, hiring or otherwise, so many floating and other churches for seamen at different points in the city and port of New York as they may deem proper, in which churches the seats shall be free, and to provide suitable clergymen to act as missionaries in the said churches." Section 3 provides that "The corporation hereby created shall be subject to all provisions and restrictions contained in the tenth, eleventh and twelfth sections of the act entitled, 'An act for the incorporation of religious societies,' passed April 5, 1813." Was this a "religious corporation" within the meaning of the section of the Tax Law to which attention has been called? The incorporators were members of a society attached to the Protestant Episcopal church in the city of New York, and they and their successors were declared to be a corporation. The object of the incorporation was to provide by building, purchase, hiring or otherwise, floating and other churches for seamen in the city and port of New York, and to provide clergymen to act as missionaries in said churches, and the corporation was subject to certain provisions and restrictions contained in the general act for the incorporation of religious societies. It is difficult to see for what this corporation was incorporated if it was not for religious purposes. Its only power was to acquire and maintain churches in the city of New York and to provide clergymen to act as missionaries in such churches. It was given no power to organize and maintain what may be called charities, as distinct from those strictly relating to the teaching of religion; and while this religious teaching was to be free, and the general provisions relating to religious corporations organized under the general act, for the election of trustees and the management of the church property, did not apply to this corporation, it was because

of the peculiar character of the persons for whose religious instruc-
tion the churches to be organized and maintained by this corpora-
tion were intended, but the object was essentially for religious
instruction, rather than for the relief of the physical wants of
those for whose benefit the corporation was intended. The pro-
visions of the act of 1813 (2 R. L. 212), a general act for the incor-
poration of religious societies, were not applicable to the incorporation
of such a society as was here incorporated. The general act con-
templated the meeting together of the persons belonging to a church
congregation or religious society not already incorporated, and the
election of persons as trustees to take charge of the estate and
property belonging thereto, and to transact all affairs relative to the
temporalities thereof. There were no such persons constituting the
religious society that was here sought to be incorporated, the object
generally being to provide a church for seamen who were tem-
porarily in the port of New York. But the sections of the general
act which were made applicable to this corporation are those which
apply to religious corporations and such corporations only. What
I think was clearly contemplated was, the incorporation of a religious
society for the purpose of furnishing religious instruction and con-
solation to those who were unable to provide for themselves.

As a part of the general revision of the laws of this State, the
Religious Corporations Law (Laws of 1895, chap. 723) was passed,
and a religious corporation was there defined by section 2 as "A
corporation created for religious purposes;" and in the same section
an incorporated church is defined to be "a religious corporation
created to enable its members to meet for divine worship or other
religious observances." This act was in force at the time of the
amendment of the Tax Law which exempts from taxation a transfer
to a religious corporation, and the appellant was, I think, clearly
within this definition of a religious corporation.

The amendment of the act for the incorporation of the appellant
by chapter 68 of the Laws of 1854 did not change its character. By
that amendment there was added a new section which provided
that it should be lawful for the corporation to procure one or more
houses and lots for the boarding, lodging and entertainment of sea-
men and boatmen in the city and port of New York. If the corpo-
ration had been organized under the General Religious Corporations

Law, giving such religious corporation, in addition to the authority to maintain churches, power to administer to the temporal wants of its members or to those to whom it provided religious instruction, it would not make it any the less a religious corporation. Its primary object is still that for which it was originally incorporated; and the fact that the Legislature has seen fit to confer upon such a religious corporation power to administer to the temporal wants of those to whom it was organized to administer, would not change the general character of the corporation, the primary object being to provide churches and clergymen for the religious needs of those whom it was intended to benefit, and the additional power being subsidiary thereto. This is emphasized by the provisions of section 5 of the Religious Corporations Law, which gives to the trustees of every religious corporation the custody and control of all the temporalities and property belonging to the corporation and authority to administer the same " for the support and maintenance of the corporation, or of some religious, charitable, benevolent or educational object conducted by it, or in connection with it, or with such denomination ; " and by chapter 607 of the Laws of 1895, by which a religious corporation was authorized to establish and maintain, as part of its regular church and charitable work, a home for the aged poor of its membership or congregation, these provisions clearly recognizing that the incidental charitable work in connection with a church does not make a church any the less a religious corporation.

This conclusion is not at all in conflict with *Matter of Watson* (171 N. Y. 256). That case related to a bequest to the Young Men's Christian Association of the city of Rome and to the Missionary Society of the Methodist Episcopal Church, and it was held that these two corporations were not, strictly speaking, religious corporations, but such corporations as were authorized by the Membership Corporations Law. The object of the Young Men's Christian Association was stated to be " the improvement of the spiritual, mental, social and physical condition of young men," while those of the missionary society were declared to be " Charitable and religious, designed to diffuse more generally the blessings of education and christianity, and to promote and support missionary schools and

christian missions throughout the United States and territories and also in foreign countries." But here we have a corporation originally organized solely for religious purposes, that is, to provide free and other churches for seamen at different parts of the port or city of New York, and it is, I think, clearly within the definition of a religious corporation as defined by the Religious Corporations Law and the Tax Law in question.

It follows that the order of the surrogate should be reversed and the proceeding dismissed, with costs.

VAN BRUNT, P. J., PATTERSON and HATCH, JJ., concurred; LAUGHLIN, J., dissented.

Order reversed and proceeding dismissed, with costs.