REBECCA J. PROCTOR et al. v. BOARD OF TRUSTEES OF METHODIST EPISCOPAL CHURCH, SOUTH, and SCARRITT BIBLE AND TRAINING SCHOOL, Appellants.

Division Two, December 31, 1909.

1. ABSTRACT: In Narrative Form. The statute does not require the record entries to be set out in full in the abstract. A narrative of the several steps in the trial is sufficient.

2. BILL OF EXCEPTIONS: Timely Evidence Taken and Cause Continued. Where all the evidence was taken at one term, and the cause continued on the only issue in the case, and there was no ruling at that term to which either party could have excepted, and judgment was rendered at the next term, the bill of exceptions was not due until said next term, and if filed then or in pursuance to an order then made it was timely filed.

3. RELIGIOUS CORPORATION: Board of Trustees of Methodist Episcopal Church, South. The Board of Trustees of the Methodist Episcopal Church, South, a Tennessee corporation, whose primary purpose, according to its charter, is "to hold in trust, for the Methodist Episcopal Church, South, any and all donations, bequests, devises, legacies and grants of land, personal property or funds in trust," is a religious corporation within the meaning of the Missouri Constitution which says that "no religious corporation can be established in this State, except such as may be created under a general law for the purpose only of holding the title to such real estate as may be prescribed by law for church edifices, parsonages and cemeteries."

4. ————: Scarritt Bible and Training School. So likewise is the "Scarritt Bible and Training School for Missionaries and other Christian Workers"—a Missouri corporation, whose object according to its charter, is to "establish, conduct and maintain in Kansas City, Missouri, a training school for missionaries and other Christian workers," said training school to "be established, conducted, controlled and maintained under the auspices of the Woman's Board of Foreign Missions of the Methodist Episcopal Church, South," and having power to enlist, in behalf of the corporation, a corps of advisory members from other evangelical denominations, to have the rights and privileges of charter members except those of voting, and to formulate for each department of the school a course of study which mis-

sionary candidates are required to pursue, all of which was to
be subject to the approval of the Woman's Board of Foreign
Missions—a religious corporation. The purpose of such school
is not instruction in general education, but to educate young
women for missionary and religious employments, and there-
fore it does not have the same status as a church college. Nor
is the religious character of the school removed or altered by
the fact that provision is made for enlisting in its behalf the
advice and co-operation of other evangelical denominations.

5. ————: **Title to Real Estate: Foreign Corporation: Comity.**
A foreign corporation cannot take title to real estate situate in
this State, if domestic corporations of the same character are
prohibited by statutes or Constitution from taking title to land
under the same circumstances. Neither the Board of Trustees
of the Methodist Episcopal Church, South, a Tennessee corpor-
ation, nor Scarritt Bible and Training School for Mission-
aries and Other Christian Workers, both being religious cor-
porations, and neither being established for the sole purpose of
holding title to real estate for church edifices, parsonages or
cemeteries, can take title to real estate in this State, and a de-
vise to either is void.

6. ————: **Collateral Attack: Construction of Will: Partition.**
The testator gave all his property to his widow for life, and the
remainder to one corporation to be held as trustee for the use
and benefit of another. The widow renounced the will and
elected to take under the statute, and she and testator's brothers
and sisters, being his sole heirs, bring suit against the corpora-
tions to have the will construed and for partition of the real
estate. *Held*, that the suit is not a collateral attack upon the
corporate existence of the defendants, but plaintiffs have the
right therein to have determined the question of whether or not
the defendants are religious corporations and whether or not
being such they can take title to real estate. And it being de-
termined that they are religious corporations other than those
established for the sole purpose of taking title to real estate for
church edifices, parsonages or cemeteries, it is *held* that they
were not legally capable of taking and holding the property
described in the will, but it descended directly to testator's
heirs; but that holding does not affect the corporate existence
of defendants.

Appeal from Polk Circuit Court.—*Hon. Argus Cox,
Judge.*

AFFIRMED.

*A. M. Seddon and Scarritt, Scarritt & Jones* for appellants.

(1)  There is no dispute as to the execution of the will in question, nor that Asa J. Fender was capable of disposing of his property by will, nor is it contended that there is any doubt or obscurity as to the intention of the testator, as expressed in the will.  Having discovered the intention of the testator it is the duty of the courts to carry the same into effect.  Cross v. Hoch, 149 Mo. 325; Redman v. Barger, 118 Mo. 568; Turner v. Timberlake, 53 Mo. 371; Preston v. Brant, 96 Mo. 552; Chew v. Keller, 100 Mo. 362; Roberts v. Crume, 173 Mo. 572.  (2)  Plaintiffs seek to set aside the will and to avoid the clearly expressed intention and provisions of the testator as to defendants, by asserting the claim that defendants cannot take the real estate devised, by reason of section 8, of article 2, of the Constitution of Missouri, which provides "that no religious corporation can be established in this state, except such as may be created under a general law for the purpose only of holding the title to such real estate as may be prescribed by law for church edifices, parsonages and cemeteries."  It is evident that this constitutional provision is intended merely as an inhibition against the Legislature and courts to prevent religious corporations from being established, except for certain purposes.  It is not contended here that the defendant corporations are not properly and legally established and existing by virtue of law. Whether or not these corporations are now transgressing or are about to transgress their legal limitations and powers, cannot be questioned in this proceeding, nor by these plaintiffs.  This question cannot be raised in a collateral proceeding, but can be raised only by *quo warranto* or other direct proceedings by the State. St. George's Church Society v. Branch, 120 Mo. 226; Church v. Tobbein, 82 Mo. 418; Church v. McGowan,

62 Mo. 279; Cass Co. v. Insurance Co., 188 Mo. 1; Burnham v. Rogers, 167 Mo. 17. (3) Even though a proper proceeding should be instituted by the State to test the right and power of these defendants to accept bequests of the nature involved in this suit, our courts will not interfere, and we submit that the acceptance of such a bequest is not violative of section 8, of article 2, of the Constitution of Missouri. State ex rel. v. Board of Trustees of Westminster College, 175 Mo. 52; Franta v. Bohemian Union, 164 Mo. 304; Colonization Society v. Hennessy, 11 Mo. App. 555. The Scarritt Bible and Training School is an educational institution, whose object it is to furnish a complete course of study and instruction by which its students are prepared for missionary work. While it is true that the Scarritt Bible and Training School is controlled and maintained under the auspices of the Methodist Episcopal Church, South, yet, it does not limit its student body to the members of that church, and in this respect is non-sectarian. (4) Equally untenable is plaintiffs' contention that defendant "The Board of Trustees of the Methodist Episcopal Church, South," is without standing in court, because it is a foreign corporation and has not complied with the statute of Missouri, with reference to foreign corporations doing business in this State. There is no evidence in the record that this corporation is doing any business, as that term is used in the statute, in this State, and there is no evidence that said defendant has not complied with the statute, with reference to foreign corporations doing business in this State. The statute, however (Sec. 1315, R. S. 1899), expressly limits its effect to such corporations as "if organized in this State, would organize under article 9, of chapter 12, of the Revised Statutes," being the article on "Manufacturing and Business Companies." This statute is, therefore, inapplicable to the corporation in question, which, if organized in this State, would be organ-

ized under article 11, chapter 12, of the Revised Statutes. The Scarritt Bible and Training School, which is duly organized under the laws of this State, is the real beneficiary in the will, and were the "Board of Trustees" incapacitated to act as trustee, the court would not permit this charitable bequest to fail for want of a proper trustee. Brandon v. Carter, 119 Mo. 572; Webb v. Hayden, 166 Mo. 39.

*Rechow & Pufahl* and *C. H. Skinker* for respondents.

(1) The abstract of record filed by appellants in this court, and served on the respondents, does not comply with the laws of the State and the rules of this court. 1st. In this, that there is a mere recital of the steps that were taken after the rendition of the judgment. 2nd. As to whether these things were made matters of record or were mere steps taken without any record entry is left to conjecture. Reno v. Fitz Jarrell, 163 Mo. 411; Rousb v. Cunningham, 163 Mo. 173; Burdick v. Security Life Assn., 86 Mo. App. 94; Joco v. Railroad, 94 Mo. App. 570; Jordan v. Railroad, 92 Mo. App. 82;Butler Co. v. Graddy, 152 Mo. 441; Nolan v. Johns, 126 Mo. 159. (2) As no exceptions were saved to any action at the August term, 1904, and no bill of exceptions filed at that term, this court cannot review anything that was done at that term of court, although it may appear from a bill of exceptions filed at a subsequent term that error was committed. R. S. 1889, sec. 728; Simpson v. Scroggins, 182 Mo. 560; Smith v. Bear, 166 Mo. 392; Richards v. Ass'n, 156 Mo. 407; Asphalt Pav. Co. v. Ullman, 137 Mo. 564; State v. Williams, 147 Mo. 14; State v. Taylor, 134 Mo. 136; State v. Ware, 69 Mo. 332; Hachl v. Railroad, 119 Mo. 335; Carpenter v. McDavitt, 53 Mo. App. 393; Ins. Co. v. Rosenhem, 56 Mo. App. 27; Daos v. Bond, 84 Mo. App. 504. (3) The defendants in this case are, under the Constitution and laws of this State, incapable

of taking and holding this real estate.    Constitution,
art. 2, sec. 8; First Baptist Church v. Robbinson, 71
Mo. 326; Catholic Church v. Tobbein, 82 Mo. 424; St.
Louis Colonization Ass'n v. Hennessy, 11 Mo. App.
555; In Re McGraws Estate, 111 N. Y. 156, 2 L. R. A.
387; 1 Jarman on Wills, 2 E. Perkins Notes, 99; Fer-
guson v. Hedges, 1 Harrington, 524; Gardner on Wills,
163.    Defendants come within the definition of a relig-
ious corporation.    27 Mo. App. 633.

FOX, J.—This action originated and was tried in
the circuit court of Polk county, and is now pending
in this court upon appeal from a judgment rendered in
favor of plaintiffs.    The action was instituted by Re-
becca J. Proctor, widow of Asa J. Fender, and the
brothers and sisters of said Fender, they being his sole
heirs at law.    It has for its purpose the construction
of certain clauses of the will of said Asa J. Fender,
and for partition of the real estate described in the
petition.

The defendant, The Board of Trustees of the Meth-
odist Episcopal Church, South, is a corporation organ-
ized under the laws of the State of Tennessee.    The
defendant, The Scarritt Bible and Training School,
is a corporation organized and existing under the laws
of this State.

By the first clause of the will of Asa J. Fender, he
gave all his property, real and personal, to his wife,
Rebecca J., to hold during the term of her natural life.
By the second clause of his will he devised all his land,
houses and tenements, to take effect after the death
of his wife, to the defendant, The Board of Trustees
of the Methodist Episcopal Church, South, and to their
successors in office, to be controlled by said trustees
for the use and benefit of the defendant, Scarritt Bible
and Training School, under the direction of the Gen-
eral Conference of the Methodist Episcopal Church,
South.

After the death of Asa J. Fender, his widow, the plaintiff, Rebecca J., renounced the provisions of the will and elected to take as provided by section 2939, Revised Statutes of 1899. She afterward married one Proctor and thereby lost her right of homestead. It was admitted in the pleadings and upon the trial of this cause, that the plaintiff, Rebecca J. Proctor, owned one-half interest in the real estate described in plaintiffs' petition. Two issues were contested and tried in the circuit court. One was, whether or not Mrs. Proctor was entitled to an allowance of one hundred dollars for repairs placed upon the property after the death of Fender; the other was, whether or not the other half interest of the property belonged to the brothers and sisters of Asa J. Fender, they being his only heirs at law, or whether under the provisions of the will the defendant, Board of Trustees of the Methodist Episcopal Church, South, took title to said one-half interest for the uses and purposes set out in said will.

We will give the evidence disclosed by the record such attention as may be necessary during the course of the opinion.

## OPINION.

### I.

The first proposition with which we are confronted, preliminary to the discussion of the legal propositions involved in this case, is the one suggested by respondents, in which the sufficiency of the abstract of the record is challenged. It is insisted that the abstract of the record does not comply with section 813, Revised Statutes 1899, and Rule 11 of this court, for the reason that the entire abstract of the record is not set out.

It is conceded that the record properly discloses the pleadings and the two judgments rendered in the cause. The abstract, which purports to be of the

record, then continues in narrative form to show that within four days after rendition of final judgment, and during the term at which said judgment was entered, motions for new trial and in arrest of judgment were filed; that said motions were overruled at the same term and that due exceptions were then and there saved; that during the same term application and affidavit for appeal were filed and appeal duly granted by the circuit court to the Supreme Court; that the appellants were, by the circuit court and at said November term, granted until the third day of April, 1905, to file bill of exceptions; that appellants filed a bond in the circuit court which was duly approved. Following the bill of exceptions appears this entry: "Filed in the office of the clerk of the circuit court of Polk county, Missouri, this 6th day of February, 1905, Luther W. Hyde, Clerk of the Circuit Court."

Section 813, Revised Statutes, does not require the record entries in full to be set out in the abstract, but does require an abstract of the entire record. As said in the case of Ricketts v. Hart, 150 Mo. l. c. 68, "But while the record proper must show the filing, it has never been ruled under our statute permitting the bringing of appeals to this court by certificates and abstracts that the record entries must be set out in full. A narrative of the several steps is held sufficient, as the statute contains within itself the means of protecting this court against imposition by false statements of the record." The abstract before us alleges, "The record of said court further shows that," and then follow in narrative form various steps which took place from the rendering of final judgment to the granting of the appeal and leave to file bill of exceptions. We think this was a sufficient compliance with the statute in question and the rules of this court.

## II.

It is next earnestly insisted by respondents that there is nothing before this court for review except the record proper, for the reason that the evidence applicable to this cause was all taken at the August term, 1904, and that such evidence so taken and the action of the court thereon was not preserved by timely bill of exceptions at the term of the court at which such evidence was taken, and that the bill of exceptions disclosed by the record now before this court is one filed by virtue of an order granting leave to file the same made at the November term, 1904.

It is true, as disclosed by the record, that all the evidence in the cause was taken at the August term, 1904, and the final judgment was not rendered until the November term, 1904. By an examination of the judgment, termed an interlocutory judgment, entered at the August term, 1904, it will be found that none of the issues made by the pleadings were determined at that term. The court simply found the admitted and conceded facts, to-wit: that Asa J. Fender was the owner of the real estate described in the petition and that he died at a certain time, leaving the will in question; that the property was not susceptible to division in kind; that the plaintiff, Rebecca J. Proctor, was the owner of one-half interest therein, and then ordered a sale of the property during that present term of court. The court concludes the judgment in the following language: "It is further considered, ordered and adjudged by the court that the plaintiff, Rebecca J. Proctor, owns one-half of said real estate in fee, and that the interests of the other parties and the question of improvements made by the plaintiff, Rebecca J. Proctor, be and is reserved for trial until after sale of said property." The only issues of any importance then existing between the plaintiffs and defendants were the ownership of the other half interest in the

real estate and the right of plaintiffs to recover in this action. The question was whether the devise to the defendant in trust, The Board of Trustees of the Methodist Episcopal Church, South, was void, and if so whether or not such interest descended to the heirs of Asa J. Fender, and whether or not they could recover in this action. Those issues were reserved by the court and it may be said they were taken under advisement until the next term of court. The final judgment entered by the court at its November term, 1904, begins as follows: "Now at this day this cause coming on for further hearing upon the evidence taken at the August term of this court." A report of sale had been filed but neither party filed any exceptions thereto. Therefore, the real issues between the parties and which had been carried over by the court and reserved for further trial were determined at this November term of court. In fact the circuit court did nothing at the August term to which either party did or could except. No point of issue was determined. Ordinarily, exceptions must be written, allowed and filed during the term, or they will be insufficient to preserve for review the point to which the exception is taken. But as said by Judge MACFARLANE in the case of Kennedy v. Siemers, 120 Mo. l. c. 84: "There are often a number of steps in the proceedings in a cause which require separate determination and interlocutory orders, and each of which has a bearing upon the final judgment. Those steps may be taken at the same or different terms. It is clearly intended by the statute that when one of these steps is ruled adversely to a party he must take and save his exceptions to that ruling at the term at which it was made, or he is bound thereby and cannot have the point reviewed by the appellate court." In the Kennedy case the trial of the cause progressed to a point where the court determined that an accounting should be taken, made an interlocutory order appointing a referee and continued

the cause. Among other things the order of the court recited: "The court hereby reserves all the questions involved in this suit until after the report of said referee shall come in and until the final hearing of this suit." The bill of exceptions in the cause was filed after the lapse of several terms. The question at issue was plaintiff's right to redeem under a deed of trust. The court said: "It will be observed that in this order there was no finding or declaration of the rights of the parties to redeem, and the question was clearly left open until the final hearing, with the rights reserved to either party to introduce additional testimony. There was no ruling to which defendant could have excepted, until the court determined the rights of the parties, and we think the exceptions were taken in time."

In the case at bar it appears from the bill of exceptions that all the evidence was taken at the August term, 1904, but in reserving for trial the only questions at issue until after the sale of the land, and entering up a judgment to which neither party objected, the court made no ruling to which either party could except at the time. The final hearing and judgment determining the only issues between the parties were upon the evidence taken at the August term; but this evidence was considered and the hearing and arguments had at the November term following. As no objection was made to the use of the evidence taken at the last term it is fair to presume that the parties considered the case as taken under advisement by the court.

The case at bar differs from the cases of Simpson v. Scroggins, 182 Mo. 560; Smith v. Baer, 166 Mo. 392, and other like cases, in that, in the latter cases, questions at issue were determined at one term and no exception made until a subsequent term. We are of the opinion that appellants' exceptions were properly made at the November term, 1904.

## III.

This brings us to the consideration of the nature and character of the defendant corporations. In other words, do they belong to that class of religious corporations which would preclude them from taking title to the real estate involved in this controversy?

The defendant, Board of Trustees of the Methodist Episcopal Church, South, was incorporated under the laws of the State of Tennessee in November, 1891. We find among the charter provisions of such corporation the following recitation: "The object of said corporation being to hold in trust, for the Methodist Episcopal Church, South, any and all donations, bequests, devises, legacies, and grants of land, personal property, or funds in trust, etc., and such other and like power, as the State had given to such corporations by virtue of an act passed February 27, 1891, and approved March 4, 1891, Chapter 45, entitled, 'An act to permit religious denominations to appoint trustees to take, hold and accept and administer donations, gifts, bequests, devises and incorporate the same.' " Among the powers given by the charter, were "to purchase and hold, or receive by gift, bequest, or devise, in addition to the personal property owned by the corporation, real estate necessary for the transaction of the corporate business, and also to purchase and accept any real estate in payment of any debt due to the corporation, and sell the same."

The other defendant, designated in the charter by the name of the "Scarritt Bible and Training School for Missionaries and other Christian Workers," was incorporated under article 10 of chapter 42 of the Revised Statutes of 1889. Article 1 of its charter provides: "The object of this Association is to establish, conduct and maintain in Kansas City, Missouri, a training school for Missionaries and other Christian Workers." Article 2 provides: "Said training school shall

be established, conducted, controlled and maintained under auspices of the Woman's Board of Foreign Missions of the Methodist Episcopal Church, South.'' Article 5 provides, among other things, that the said corporation should improve certain real estate in Kansas City, which improvements were to be made under the control of the Woman's Board of Foreign Missions of the Methodist Episcopal Church, South. Also this article provides for enlisting in behalf of the corporation, a corps of advisory members from other evangelical denominations, to have the rights and privileges of members except that of voting; also to formulate for each department of the school a course of study which missionary candidates were required to pursue, all of which shall be subject to the approval of the Woman's Board of Foreign Missions.

The foregoing is a sufficient reference to the provisions of the respective charters of the defendant corporations, and sufficiently points out their objects, purposes and powers to enable us to determine the nature and character of such corporations.

As to the first defendant mentioned, The Board of Trustees of the Methodist Episcopal Church, South, in our opinion, it is clear from its charter provisions and the powers bestowed upon it that its primary object and purpose of organization was for religious purposes, and in carrying out such purposes to aid the religious denomination known as the Methodist Episcopal Church, South. But without discussing further for the present the provisions of the respective charters of the two defendant corporation, it is well to ascertain the law applicable to the objects and purposes of corporations of the nature and character now under consideration.

The case of In re St. Louis Institute of Christian Science, 27 Mo. App. 633, was an application for a *pro-forma* decree of incorporation under article 10 of chapter 42 of the Revised Statutes. The decree was

denied by the circuit court on the ground that the incorporation would conflict with the constitutional provision providing "that no religious corporation can be established in this State, except such as may be created under a general law for the purpose only of holding the title to such real estate as may be prescribed by law for church edifices, parsonages and cemeteries." The action of the circuit court was affirmed by the Court of Appeals. It was held that the purpose of the corporation did not come within the exceptions mentioned in the constitutional provision. LEWIS, P. J., who delivered the opinion of the court, among other things, said: "The leading purpose of the intended corporation is the healing of physical and mental diseases. But all the healing is to be accomplished by the supposed efficacy of a religious tenet. Take away the religious agency, and there is literally nothing left, whereby the corporation may effect its purposes. Religion is its motive power, and quite as essential to all its work, as is money to a banking corporation, or a railway, cars, and locomotives to a railway company. If this does not make it a religious corporation within the constitutional meaning, then nothing short of a church regularly ordained for public worship can come within the constitutional intent."

Manifestly even giving to the charter provisions of these two defendant corporations their widest scope, neither one of them was organized or established for purely academic purposes, or to impart general education, literature, or the arts and sciences. If they had been they would not be in the constitutional sense religious corporations. There are in this State a large number of schools and colleges under church control, but these schools propose to impart a general education, and are not established for the sole purpose of educating young men and young women for missionary and religious purposes. They are not religious cor-

porations within the inhibition of the constitutional provision, but they stand upon a footing with Westminster College, as pointed out in the case of State ex rel. v. Board of Trustees, 175 Mo. 53.

In the State of New York, where a corporation was organized to provide buildings by hiring or purchase, to be used as churches for seamen and to provide clergymen to act as missionaries in said churches, it was held to be a corporation organized for religious purposes, within the meaning of a statute providing that bequests to such corporations shall be exempt from the transfer tax. [In re Prall's Estate, 79 N. Y. Supp. 971.]

The defendant, The Board of Trustees of the Methodist Episcopal Church, South, was incorporated, as indicated by its charter, for the sole purpose of holding in trust, bequests, devises, legacies and grants of land and personal property, for the benefit of the Methodist Episcopal Church, South. This court will take notice of the fact that the Methodist Episcopal Church, South, is a strong and commendable religious denomination, having its churches, ministers and members located in this State, as well as other states of the Union. This defendant was manifestly not incorporated for the purpose of maintaining, supporting or controlling a college or school in which were taught literature, arts and the sciences, and general education, but from an analysis of its charter provisions its sole purpose was to hold and administer property, not for religious purposes generally, but for the benefit of a particular religious denomination. We think there can be no question but that this defendant was, according to the provisions of its charter, a religious corporation, and incorporated for purely religious purposes.

As to the nature and character of the other defendant corporation, The Scarritt Bible and Training

School, a more serious question is presented. The constitutional provision, article 2, section 8, provides that "no religious corporation can be established in this State, except such as may be created under a general law for the purpose only of holding the title to such real estate as may be used for church edifices, parsonages and cemeteries." Thus we see that a corporation organized for the purpose of holding title to real estate used for a church edifice, a parsonage, or a cemetery, is a religious corporation. But the exception by its very terms implies that corporations organized for broader purposes than those enumerated may be religious corporations, and their establishment in this State, is prohibited. The language of the provisions of the Constitution seems to inhibit the establishment of any religious corporation. The exception allows such corporations to be established by general law only and for the specific purposes therein enumerated. [Catholic Church v. Tobbein, 82 Mo. 418.]

Directing our attention to the defendant corporation, designated in its charter as "The Scarritt Bible and Training School for Missionaries and other Christian Workers," it is sufficient to say that from a most careful examination and consideration of all of its charter provisions, we have reached the conclusion that such charter provisions disclose that its primary and sole object, in harmony with its name as designated by the charter, was to institute a school in which missionaries and other Christian workers were to be trained. No provision is made for imparting to them a general education, or to advance them in literature, arts and the sciences, nor is any provision made for imparting a primary or academic education. This school, termed a training school, was to be established, conducted and controlled under the auspices of the Woman's Board of Foreign Missions of the Methodist Episcopal Church, South. While it is true that provision is made for enlisting in behalf of the school

the advice of members of other evangelical denominations, yet this fact would not remove the religious character of the school. The school established need not necessarily be denominational. Power is given to formulate for each department a course of study which missionary candidates shall be required to pursue. The charter, however, provides for issuing diplomas, setting forth the attainments of the candidates and other qualifications for the work in which they desire to enter. The whole scope and import of the charter indicates clearly that the sole and only object of the corporation was to establish and maintain a school wherein its students and candidates were fitted for Christian missionary work, and to aid in propagating the Christian religion. We therefore conclude that the Scarritt Bible and Training School for Missionaries and other Christian Workers, is a religious corporation.

## IV.

It is next earnestly insisted by learned counsel for appellant that, under the law and rules of comity existing between the states, the defendant, The Board of Trustees of the Methodist Episcopal Church, South, should not be precluded under the Constitution and laws of this State from taking title to the real estate in controversy. It is sufficient to say upon that proposition that this State recognizes to the fullest extent the doctrine of comity between the states. A foreign corporation may ordinarily acquire and hold title to real estate located within our boarders upon compliance with the requirements of our laws. In cases where no permit or permission to do business or hold title to real estate is required, then a foreign corporation may come into this State, subject, however, to our statutory and organic law. Yet, manifestly it would be opposed to public policy and against the theory of our government to permit a foreign corporation to

take title to real estate located in this State, if domestic corporations of the same character are prohibited by our statutory or constitutional law from taking title to land under the same circumstances. [Cook on Corporations, sec. 695; State ex rel. v. Cook, 181 Mo. 596.] Hence it follows that the defendant, "The Board of Trustees of the Methodist Episcopal Church, South," is in no better position to take title to real estate under the will of Asa J. Fender than is the defendant, The Scarritt Bible and Training School.

Having reached the conclusion that neither of the defendant corporations was established for the purpose only of holding title to real estate for church edifices, parsonages or cemeteries, and being as we have herein indicated, religious corporations, it follows that they fall within that class of religious corporations which are prohibited by the Constitution from taking or holding title to real estate for any other purpose; hence our conclusion is that neither of these defendant corporations was capable of taking and holding title to the real estate described in the will of Asa J. Fender in the manner therein attempted to be done.

## V.

Appellants in their final contention insist that this proceeding is a collateral attack upon the corporate existence of the defendants, and therefore cannot be maintained. Our attention is directed to the cases of St. George's Church Society v. Branch, 120 Mo. 226; Church v. Tobbein, 82 Mo. 418; Church v. McGowan, 62 Mo. 279, and other cases. A careful analysis of the rules of law announced in those cases, in our opinion, will demonstrate that they have no application to the propositions involved in the case at bar. The plaintiffs in this case do not undertake to make a direct attack upon the corporate existence of the defendants, but they simply urge and insist that as neither

of said defendant corporations was legally capable
of taking and holding the property described in the
will for the purposes and uses therein declared, the
attempted devise to the Board of Trustees of the
Methodist Episcopal Church, South, never took effect,
and the property mentioned descended directly to the
heirs of Asa J. Fender.

It will be observed that as between the plaintiffs
in this case and the defendants, there is no question
of a contract nature, nor is there any question of es-
toppel by which the plaintiffs would be precluded from
setting up any legal bar to the right of the defendants
in taking title to the property as devised. If the ques-
tion in this case concerned the forfeiture of the charter
of either of the defendants there is no question but
what the State alone would be the proper party to inter-
vene, but as pointed out above, this is not a question
of forfeiture, it is simply a question of title to the
property, and if it has not been legally devised or if
the defendants were incapable of holding it, then the
title necessarily vested in the heirs at law.

In the case of Re Estate of McGraw, decided by
the Court of Appeals of New York, volume 2, Lawyers
Reports, Annotated, p. 387, the late lamented Mr.
Justice PECKHAM, who was then a member of that
court, gave the question under consideration very
thorough investigation, and drew a clear and lucid dis-
tinction between an attempt to make a collateral attack
upon the existence or powers of a corporation, and
the question as to whether a corporation had the power
to take by devise, or whether the property descended to
the heirs. Among other things, he said: "A devise to
a corporation which is forbidden to take does not,
therefore, give a title subject to the right of some
superior to claim a forfeiture of the land; but if it
be in violation of a statute, I think the devise is void,
and the land descends to the heir or residuary de-
visee." If the question at issue in this case grew out

of contract relations between the plaintiffs and the defendants, then it is quite clear, under all the authorities, that the plaintiffs could not take advantage of the want of power in defendants to take and hold property or to make contracts.

In the case of DeCamp v. Dobbins, 31 N. J. Eq. 690, Chief Justice BEASLEY uses this very appropriate language: "Nor can I assent to the other proposition that if, as the contention assumes, this bequest is violative of the law if carried into effect, none but the State can intervene. I find no warrant for such a doctrine, either in the legal principles belonging to the subject or in the adjudications. There can be no doubt that there are cases in which, when a corporation has acquired rights of property to an extent or in a manner unwarranted by its charter, no one but the public can have the right to complain. A grantor making title to a corporation might be estopped from questioning the effect of his own conveyance. So, a mere stranger could not question such a corporate title. But I have not observed any decision that asserts, when a title is created by devise which vests in a corporation, for its own use, a larger quantity of property than the laws authorize, that the heir at law has no right to make objection."

We have, as herein indicated, given expression to our views upon the leading and controlling legal proposition disclosed by the record, which results in the conclusion that neither of the defendant corporations, under the Constitution of this State, was capable of taking title to the property under and by virtue of the will of Asa J. Fender for the purposes therein mentioned, and that the plaintiffs, as the only surviving heirs of Asa J. Fender, had the right in this action to raise the question of title to the property as between them and the defendant corporations, and that in doing so they did not infringe upon the right of the sovereign State to question the legality of the defendant's cor-

porate existence. With these conclusions the judgment of the trial court should be affirmed, and it is so ordered. All concur.