Connelly Foundation Appeal.

Argued January 19, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Robert James Jackson,* with him *Kassab, Cherry, Curran & Archbold,* for appellant.

*George S. Saulnier,* with him *George H. Class, Oscar M. Hansen,* and *Class, Saulnier, Dunn & Abel,* and *Morgan, Lewis & Bockius,* for appellee.

OPINION BY MR. JUSTICE O'BRIEN, April 22, 1970:

On November 9, 1967, the Board of School Directors of the School District of Haverford Township passed a resolution authorizing the filing of a Declaration of Taking of premises owned by appellant. The appellant filed preliminary objections to the Declaration of Taking, arguing that its property is exempt from condemnation under Section 721 of the Public School Code, and for the further reason that the appellee had failed to give proper security for the payment of just compensation.

After hearing, the lower court entered its order dismissing the preliminary objections.

The Act of March 10, 1949, P. L. 30, Art. VII, Sec. 721, known as the Public School Code of 1949, 24 P.S. 7-721, provides: "Whenever the board of school directors of any district cannot agree on the terms of its purchase with the owner or owners of any real estate that the board has selected for school purposes, such board of school directors, after having decided upon the amount and location thereof, may enter upon, take possession of, and occupy such land as it may have selected for

school purposes, whether vacant or occupied, and designate and mark the boundary lines thereof, and thereafter may use the same for school purposes according to the provisions of this Act: Provided, *That no board of school directors shall take by condemnation any burial ground, or any land belonging to any incorporated institution of learning, incorporated hospital association, or unincorporated church, incorporated or unincorporated religious association, which land is actually used or held for the purpose for which such burial ground, institution of learning, hospital association, church or religious association was established."* (Emphasis supplied)

Appellant contends that, when viewed in light of its totality of activity, it is a religious association, and the land here involved is used for the purpose for which appellant was established.

As evidence of its status as a religious organization, appellant emphasizes the following facts:

1. Its articles provide specifically that "Its purposes are as follows: The Corporation shall be operated exclusively for religious, charitable, scientific, literary or educational purposes. (A) The activities which the Corporation shall carry on from time to time shall be such as may be determined by the Board of Directors to promote the public welfare, whether such activities be purely religious, charitable, scientific, literary, or educational, or whether they be a combination of such purposes."

2. For the years 1965, 1966 and 1967, appellant made contributions totaling $1,206,804.69 to charitable organizations, ninety-eight percent of which were to religious organizations.

3. The property in question was used off and on by the Holy Rosary Sisters after they had a fire at their own convent at Villanova in 1963 until they moved out in August of 1967. In addition, appellant contributed

$23,581.48 in 1966 and $24,522.01 in 1967 to the Holy Rosary Sisters for the operation of the premises.

During part of 1962, the property was used by the Sisters of the Grey Nuns. At that time the Grey Nuns submitted an application for an appeal from the action of the building inspector in refusing a permit for use and occupancy of the building for religious purposes. The application was withdrawn in December of 1962.

In *Corpus Juris Secundum,* religious society (or association) has the following definition: "A religious society . . . is made up of individuals who have associated together for religious as opposed to secular purposes." 76 C.J.S. Religious Societies, Sec. 1(a), p. 734-35.

*Webster's Third New International Dictionary* defines the word "religious" as "of or pertaining to religion: concerned with religion: teaching or setting forth religion."

*Black's Law Dictionary,* 4th Edition, at page 1455, defines "religion" as "Man's relation to Divinity, to reverence, worship, obedience, and submission to mandates and precepts of supernatural or superior beings."

Appellant is composed of twenty to twenty-five members, all of whom became members automatically by making a contribution to the appellant. Although the members "theoretically" have the power to elect the board of directors, the membership does not actually meet, and appellant's president testified that the board was not actually elected. The board meets four to six times a year, three of its six directors being members of the Connelly family.

The Statutory Construction Act, the Act of May 28, 1937, P. L. 1019, Art. IV, Sec. 58 (46 P.S. 558) calls for the strict construction of statutory exemptions of land from condemnation. With this rule of statutory construction in mind, after examining these facts, we agree with the court below. The members of appellant

have associated together for purposes of making charitable contributions to any one of the five purposes enumerated in its charter, all of which generally are "to promote the public welfare." As such, appellant is a charity, not a religious association.

The cases relied on by appellant can be easily distinguished. *In re Morgan's Estate,* 173 Ohio St. 89, 180 N.E. 2d 146 (1962), dealt with an organization which existed solely to administer pensions for employees of the Presbyterian Church. *In re Prall's Estate,* 78 App. Div. 301, 79 N.Y.S. 971 (1903), dealt with a corporation organized to provide floating and other churches for seamen. Appellant, on the other hand, administers no such program. It was organized to provide money for five types of organizations which promote the public welfare, only one type of which could be but was not necessarily an organization like the religious associations which were the subjects of *Morgan* and *Prall's, supra.* Therefore, appellant's property could not be exempt from condemnation.

Appellant also argues that its property was taken without due process of law, since appellee failed to give adequate security to secure payment of just compensation.

The effect of condemnation is to pledge the power of taxation of the school district for all damages which may be sustained by the owner on account of the taking of the property. The pledge of the condemnor's taxing power is constitutional and automatically provided by statute (Act of 1949, March 10, P. L. 30, Art. VII, Sec. 722, 24 P.S. 7-722). The school district has unlimited ad valorem taxing power to pay lease rentals to a school authority to finance its construction of the proposed school. Sec. 672 of the Public School Code of 1949 (Act of March 10, 1949, P. L. 30), as last amended January 26, 1966, P. L. (1965) 1606, Sec. 1, 24 P.S. 6-672.

We agree with the court below. The pledge of the school district's taxing power is sufficient security to pay appellant just compensation and to fulfill the requirements of due process.

Order affirmed.