BENJAMIN P. WINSLOW *vs.* DANIEL CUMMINGS & otheis.

A testator having made a bequest to " the Marine Bible Society," and there being no society of that name in existence; but, it appearing, in answer to a bill in equity, brought to obtain the direction of the court as to the disposition of the bequest, that, at or shortly before the time of the making of the will, there was a voluntary association in being, known by the name of " The Boston Young Men's Marine Bible Society," the object of which was " to circulate bibles among destitute seamen," but which, at the time of the testator's death, had been dissolved or become extinct; it was held, that the latter was the society intended by the testator, and the court thereupon appointed a trustee, to receive and dispose of the legacy, by appropriating the avails thereof to the purchase of bibles, to be distributed among destitute seamen, and distributing the same, as near as may be, in conformity with the constitution and by-laws of the Boston Young Men's Marine Bible Society, as it formerly existed.

Where a testator gave several legacies, both to charitable associations and to individuals, and, in order to carry one of the former into effect, it became necessary for the court to appoint a trustee, it was held, that it was no objection to this course, that the estate was insufficient to pay all the legacies in full.

THOMAS S. WINSLOW, of Boston, master mariner, by his will, executed on the 17th of June, 1838, and proved on the 13th of May, 1839, bequeathed pecuniary legacies to divers individuals and charitable institutions, and the residue as follows: "The residue of my property both real and personal, (after deducting all expenses and commissions of my executors for executing this instrument,) my wish is, that it may be divided among such charitable and religious institutions as my executors may think best, and it is my particular request, that my name may not be known as the donor."

Among the legacies was the following, numbered the sixth : —

"To the Marine Bible Society I give one thousand dollars."

The estate proving insufficient to pay the legacies, the executor divided the proceeds thereof among the legatees, in proportion to their several legacies, with the exception of a legacy of five hundred dollars to Mendwell Sumner, which, with the consent of all the known parties in interest, was paid in full, and with the further exception of the sum of seven hundred and twenty-nine dollars, which was reserved as the distributive share of the legatees mentioned as above in the sixth article of the will.

The plaintiff, who was the executor of the will, brought his bill in equity, in which the several legatees, and George W. Phillips, esquire, were made defendants, in order to obtain the instructions and directions of the court, as to the application of the share of the legatees named or referred to in the sixth article of the will as above stated.

The plaintiff alleged, that he had not been able to discover any such society as the Marine Bible Society, though he had made diligent inquiry therefor; that he had been informed and believed that at or shortly before the time of making the will, there did exist in Boston a voluntary association, called

"The Boston Young Men's Marine Bible Society," which had been dissolved, or become extinct before the death of the testator; that he had been informed and believed, that the testator was in the habit, during his lifetime, of occasionally attending the meetings of that society, and had contributed to its funds; and that George W. Phillips, one of the defendants, was the last president thereof.

The plaintiff prayed for the instruction and direction of the court, whether the share of the legatees mentioned in the sixth article should be distributed among the other legatees named in the will, in proportion to their respective legacies; or whether it should be held by the plaintiff, or paid over to any other person or persons, society or societies, and whom; for the use specified in the sixth article of the will; or whether, under the residuary clause, the plaintiff had power to pay over such share to any charitable and religious institutions to whom he should think it best to pay the same.

The several defendants (except Phillips) filed answers to the bill, in which they admitted all the matters and things therein alleged, and submitted themselves to the judgment and decree of the court in the premises.

The answer of the defendant, George W. Phillips, was as follows: —

"This defendant, for answer to so much of said bill as relates to the existence of the Boston Young Men's Marine Bible Society, and the connection of this defendant, and of said complainant's testator therewith, saith: That there was, some thirteen years ago, a voluntary association called the Boston Young Men's Marine Bible Society, of which society, during the last four years of its existence, he was president: That said society had a written constitution by which it was governed, the first article of which was: "This society shall be denominated the Boston Young Men's Marine Bible Society, the object of which shall be to circulate bibles among destitute seamen;" and that during its existence it collected assessments from its members and contributions from its friends, and expended the same in the purchase of bibles,

which were distributed among destitute seamen by its own members and agents, and by the pastors settled for the time being over the two religious societies for seamen in said Boston, one of which had its place of worship in North square, and the other in Purchase street: That this defendant did not know said complainant's testator personally, but that he has been informed by those who did so know him, and believes it to be true, that said testator was in the habit of attending the public meetings of said society and of contributing to its funds, and that he sometimes expressed his interest in its object: That said society held regular quarterly meetings, of which one was an annual and public one, and its officers, constituting a board of directors, held meetings as occasion required; and that a record of all such meetings, and of the doings thereat, was kept by a secretary; that from such records which this defendant has examined, for the purpose of making this answer, it appears, that said society was formed on the 29th of May, 1829; that its last quarterly meeting was held on the 5th of November, 1835; and the last meeting of the board of directors was held on the 26th of January, 1836.

" And this defendant further answering saith, that there is no record of any formal dissolution of said society, but that at or about the time of the last meeting of said board of directors, as well as he can now remember, it was determined by the members of said society to dissolve the same, inasmuch as it was thought by them, and so declared, that the object for which it was originally formed, and had been continued, could be accomplished by other bible societies, and that since that time there has been no meeting held, nor any act done, either by said society or its board of directors, except as next hereinafter stated: That on the 9th of September, 1842, there was a meeting of such members of said society as could be found still resident in Boston, which was called at the request of said complainant, for the purpose of procuring a vote authorizing this defendant, as president of this society, to assent on its behalf to certain instructions given by the other lega-

tees under said will mentioned in said bill, and which, to the best of this defendant's recollection and belief, related, among other things, to the payment in full of the legacy of one Mendwell Sumner; that at said meeting, at which but few of the members of said society (that had generally consisted of above one hundred members) were present, such a vote was passed, and with it another, of both of which a record was made in the books of said society, authorizing this defendant to receive the said legacy given by said will to the " Marine Bible Society," and upon payment thereof full acquittance to make and deliver to said executor : That said defendant assented to said instructions, but never claimed said legacy, because he believed he had no right to receive the same, and no power to discharge said executor upon payment thereof.

" As for all the other matters and things set forth and charged in said bill, not hereinbefore answered unto, this defendant saith that he believes the same to be true as set forth and charged therein."

The cause was argued in writing, upon the bill and answers, by *W. Sohier* and *J. Lowell,* for the plaintiff; by *C. H. Parker* and *T. B. Pope,* for the Boston Port Society, defendants; by *L. H. Boutell,* for the Seaman's Aid Society, and other defendants; and by *G. W. Phillips,* for himself.

DEWEY, J. It is not denied, that the testator really intended to give a legacy of one thousand dollars to " The Boston Young Men's Marine Bible Society." The question arises, however, whether that purpose has been indicated in such a manner, that the court can give effect to it.

1. Is the name of the society, as found in the will, such as sufficiently to designate the society formerly known as " The Boston Young Men's Marine Bible Society " ? The legatees in question are described in the will as " The Marine Bible Society." The misdescription is a slight one. There is no other society claiming to be the society intended under this description ; and there are various facts introduced in the answer of Mr. Phillips, and admitted to be truly stated, tend-

ing to identify this society as the one designated by the testator to receive this legacy. If a testator errs in the name of the legatee, but sufficiently identifies the person or corporation, such error does not defeat the legacy. Swinburne on Wills, Part 7, Sect. 5. Where legatees are mentioned in a will by names which they never in point of fact had, yet they will take upon its being proved that the testator intended them. *Benson* v. *Whittam,* 2 Simons, 493. A legacy given to the "Boys' Asylum and Farm School" was held a good legacy to the "Boston Asylum and Farm School for Indigent Boys." *Minot v. Boston Asylum,* &c., 7 Met. 416. The authorities, upon this subject, are numerous, and will be found very fully cited in the case of *Tucker* v. *Seaman's Aid Society,* 7 Met. 188. No difficulty, therefore, arises from the misdescription of the name of the legatees, in the present case.

2. It is objected, that no such society as the Boston Young Men's Marine Bible Society existed at the time of making the will, and it is said to be an insuperable objection to giving effect to this legacy, that this society, although it had previously existed under the form of a voluntary association, had failed to continue its annual meetings and organization, by the choice of officers down to the period of the making of this will. If, by this objection, it is intended to suggest, that there was no association in existence competent in law to take a legacy, the objection would equally have existed, if the organization of the society had been kept up, and it had continued to the present day to hold meetings, and to be actively engaged in the work of distributing bibles; inasmuch as it was at all times an unincorporated society. The real ground of objection is not, therefore, that this legacy must fail by reason of a want of capacity in the society to take a bequest, but from the want of any certain, clear and definite description of a person or association, to indicate the legatee of the charity, and the objects to which the legacy is to be applied. As to the want of capacity to take a legacy, by reason of having no legal existence as a corporation, that

can be readily supplied by the appointment of a trustee ; if the object of the legacy, and the particular charitable use to which the testator appropriated it, can be ascertained. It seems to us, that these may be ascertained, and that although this society had ceased to continue its regular organization, yet its previous existence, its well defined objects of charity, and mode of distribution of its funds, may be resorted to, in order to determine the purpose of this legacy, and what disposition of it will effectuate the intention of the testator.

This society had a written constitution, in which the purpose of its organization was defined to be, " to circulate bibles, among destitute seamen." This object is a definite one, and the purpose of the testator may be certainly and easily carried into effect by a trustee appointed by the court. Nothing more is necessary to be done in order to give effect to the legacy, than would be required if the society had fully re tained its organization; it being an unincorporated society. The court, in such cases, appoint a trustee, who is to apply the avails of the legacy to the objects and in the manner that the society designated dispensed its charity. So here the trustee to be appointed will apply the avails of this legacy to the same objects, and as near as may be in the usual manner adopted and practised by the Boston Young Men's Marine Bible Society. We may thus give effect to the legacy, as a charity to be applied in the manner indicated by the constitution and by-laws of this society, as it existed when known to the testator, and as he supposed the society to be at the time of executing his will. The trusts are therefore well described by such reference to a society, which had existed under a written constitution, clearly stating the purposes of its organization and the objects of its charity. The objection, therefore, is not well founded, that the legacy is no‧ given to a well defined charity. As authorities for the positions thus stated, it is only necessary to refer to a few cases. The general principle, that this court will sustain a legacy to an unincorporated society, and appoint a trustee to carry into effect the general purpose of the testator, is settled by the

cases of *Burbank* v. *Whitney*, 24 Pick. 146; *Bartlett* v. *Nye*, 4 Met. 378; *Washburn* v. *Sewall*, 9 Met. 280. In the case last cited, it was said: "In case of charitable gifts, it is no objection to their validity, that no person is named, capable of taking the legal interest. If the object can be ascertained, the want of a trustee will be supplied by appointment by a court of equity."

In Story's Commentaries on Equity, (vol. ii.,) § 1166, he says, in case of a legacy given to trustees to distribute in charity, and they all die in the lifetime of the testator, yet it will be enforced in equity. In § 1169, it is said, "If the bequest be for charity, it matters not how uncertain the persons or objects may be, or whether the persons who are to take are in *esse* or not, for in all these and the like cases, the court will sustain the legacy, and give it effect, according to its own principles." We perceive, therefore, no difficulty in giving effect to this legacy, and in carrying out substantially the original purpose of the testator.

It was urged upon us, by the counsel for the other legatees, that the court ought not to lend their aid, as a court of equity, to enforce this charity, inasmuch as the entire estate had proved insufficient to pay all the other legacies given in the will; and that it was more suitable, to appropriate the sum now the subject of controversy to make up the deficiency of the other legacies, than to apply it to an object which will require the appointment of a trustee, before it can take effect. We do not think this ground can avail. If we find the legacy to the Marine Bible Society to be so given, as to authorize us to direct its payment by the executor, then it stands upon the same footing with the other legacies, especially all those given to unincorporated societies. Its peculiar object will not be fully obtained by giving it to the other charitable societies named as legatees. If distributed as a lapsed legacy, it must be divided *pro rata* not only among the charitable societies which are legatees, but also among the other legatees, who have personal legacies given them for their own use.

31 *

The result is, therefore, that this legacy is to be taken to be a legacy to the Boston Young Men's Marine Bible Society; and the court appoint George W. Phillips, the former president of the society, a trustee, to receive and dispose of the legacy; he appropriating the avails of the same to the purchase of bibles, to be distributed among destitute seamen, and conforming, as far as may be, in the distribution thereof, to the constitution and by-laws of said society, as it formerly existed.