———o———

JOHN SCHMIDT, *et al.*, Plaintiffs in Error, *vs.* PHILIP HESS, *et al.*, Defendants in Error.

1. *Bequest to a church afterward incorporated—How treated in equity—Faith of grantor how ascertained.*—A grant of land to a church is a charity, and although the church is, at the time of the grant, unincorporated so that no grantee is then *in esse* capable of taking it, and although the language used as indicating the intent may be somewhat obscure, yet equity will effectuate the trust, and protect those equitably claiming under the grant. And, in ascertaining the faith of the grantor, resort may be had to the usages, tenets and ecclesiastical history of the church to which he attached himself.

*Error to Cole County Circuit Court.*

*Lay & Belch*, for Plaintiff in Error.

I. The specific intent of the donor, if it can be ascertained, will be enforced. (Kinska vs. Lutheran Church, 1

Sand. Ch., 439 ; Hoff. Ch., 202 ; Bowden vs. McLeod, 1 Edw., 588 ; First Const. Ch. vs. Cong. Soc., 23 Iowa, 567 ; Harmon vs. Drethen, 1 Spen. Eq., 87 ; Lawyer, et al. vs. Chipperly, 7 Paige, 281 ; Hosea vs. Jacobs, 98 Mass., 65 ; German Ref. Ch. vs. Comm., 3 Barr, 282, 1 Watts, 227, 1 W. & S., 9, 6 Barr, 201, 9 Barr, 321, 6 Wright, 503, 4 N. S. 653, 1 Kenan, 243 ; Keyser vs. Stansifer, 6 Ohio, 363 ; People vs. Steel, 2 Barb., 387 ; Baker vs. Tales, 16 Mass., 506 ; Wennebenner vs. Colder, 43 Penn. St., 244, 48 Penn. St., 20, Wright 12 ; Hullman vs. Honcomp, 5 Ohio St., 237, 14 Ohio St., 31, 16 Mass., 504, 50 Mo., 167 ; State, ex rel. Pittman, et al., vs. Adams, et al., 44 Mo., 571, 577 ; 2 Dresser, 431 ; Ang. Corp., 194 ; 16 Ohio, 583.)

These defendants do not pretend to be Lutheran in doctrine, or that they are any part of a Lutheran Church or congregation. They have withdrawn, and united with a different denomination—a distinct society formed in 1859.

On the other hand the members of the church to which the plaintiffs belong testified that they were all Lutherans. And there was no other denomination of Lutherans in the city. We also prove conclusively that they constitute the same Lutheran congregation in continuation, to which the donors, Routzong and wife, gave their adherence in their life-time, and up to their death.

*H. B. Johnson*, for Defendant in Error, cited, in argument, the following, among other authorities: Hartford vs. Wetherell, 3 Paige Chy., 304 ; Kriskern vs. Lutheran Churches, etc. 1 Sand. Ch., 430 ; Organ Meeting House vs. Seaford, 1 Del. Eq., 457 ; Keyser vs. Stansifer, 6 Ohio, 363 ; Attorney General vs. Pearson, 3 Meriv., 352, 395 ; People vs. Steele, 2 Barb, 397 ; Presb. Congr. vs. Johnson, 1 W. & S., 9 ; McGinnis vs. Watson, 5 Wright, 9 ; Luth. Cong. vs. St. Michael's Ev. Ch., 48 Penn. St., 20 ; Coit vs. Starkweather, 8 Conn., 289 ; Jackson vs. Goes, 13 Johns., 518 ; Powell vs. Biddle, 2 Dall., 70 ; Miller vs. Gable, 2 Denio, 492 ; Swed. Ev. Luth. Ch. vs. Shirer, 16 N. J. Eq., 457 ; McGinnis vs. Watson, 41 Penn.

St., 16; Proc. Gen'l vs. Stone, 1 Hagg. Rep., 424; Hodg. Hist. Creeds; Dartmouth College vs. Woodward, 4 Wheat., 646; 3 Pet., 119.

SHERWOOD, Judge, delivered the opinion of the court.

This is a proceeding in the nature of a bill in equity, instituted in the Cole Circuit Court by plaintiffs as trustees of the Evangelical Lutheran Trinity Church, by which it is sought to have vested in themselves, as such trustees, the title to a certain parcel of ground situate in Jefferson City, as a place of interment for that church, in conformity, as it is claimed, to the deed of Christian Routzong, bearing date August 28, 1852, and to restrain the defendants, who are the trustees of the church known as the German Evangelical Central Congregation, and the members of such church, from the use of the ground thus conveyed, until a final hearing, etc., etc.

The deed of Routzong was delivered to his son-in-law, John Guenther, and was made to the "Lutheran Church," and the parcel of ground hereby donated was granted for a burial ground in consideration of the respect entertained by the donor for said church.

Without adverting to the evidence in detail, it shows with very convincing and conclusive clearness that the church to which Routzong belonged was Lutheran in doctrine, that the distinguishing characteristic of that faith consists in accepting all that the Augsburg Confession teaches, and rejecting all that it rejects; that to the most of laymen this church is known and designated by no other name than the "Lutheran Church;" that to this church, although then unorganized, and to the believers in the Lutheran faith, Routzong and his children among the number, Rev. Mr. Kolb first preached, while the meetings were held at the house of John Guenther, Routzong's son-in-law, to whom, as before stated, the deed for the burial ground was delivered; that Mr. Kolb was succeeded in his ministrations to this congregation by Rev. Mr. Knaup, he by Rev. Mr. Mayer, he by Rev. Mr. Sandross, and he by the clergyman at present officiating, Rev. Mr. Thurow; that the

38—VOL. LX.

names of all these ministers are on the list of the Missouri Synod, a strictly Lutheran organization ; that the names of none of the ministers of the church to which defendants adhere are to be found on such list, or are recognized by the church to which plaintiffs belong ; that it was the intention of the donor, Routzong, to give the burial ground to the church and congregation to which Mr. Kolb preached, and with which the donor and his children worshiped, and that that church which subsequently organized and built a brick house for worship below Zwinger's was the only Lutheran church then or now in Jefferson City ; that "the church on the hill," to which the defendants and their associates belonged, entertained theological views widely different from those entertained by the church to which plaintiffs belonged, and that the church to which defendant belonged was not organized and had no preacher until the year 1859, and he, the Rev. Mr. Reiger, did not pretend to be a Lutheran.

The answer of the defendants denied the chief allegations of the petition, and claimed that the deed was intended for the benefit of the church and congregation to which they belonged, and asked for affirmative relief in the form of a decree vesting the title to the premises in controversy in themselves as trustees of the "German Evangelical Central Congregation." The evidence, however, offered on their part, does not seriously militate against or negative that offered by the plaintiffs, but, in many particulars, adds additional force to the testimony already adduced by plaintiffs.

The ground upon which Courts of Equity interfere in cases of this sort is that of effectuating the specific intent of the donor. And on this point the evidence of the son and daughter of Routzong, who worshiped with and espoused the same faith as their father, is entitled to and should receive far more than ordinary weight in determining the purpose by which he was actuated in making the donation.

It is not to be presumed that the grantor would devote his property to the benefit of a church or congregation alien in faith to that to which he adhered ; and in ascertaining what

that faith was and is, resort may be had to the usages of the church to which he attached himself, to the books containing the creed or tenets of religious faith of that church, and to ecclesiastical history. When by a resort to such or similar means, the theological belief of the grantor is clearly ascertained, and when satisfactory information is likewise afforded, as in the present instance, by competent evidence as to the intent of the maker of the conveyance, although the language used in such conveyance as indicative of the intent may not be altogether free from obscurity, a Court of Equity will interpose in favor of those who may equitably claim under the grant, and afford its aid and protection against any infringement of the equitable rights which have thus accrued.

In the leading case in England, that of the Attorney General vs. Pearson, 3 Meriv., 352, the purpose declared in the deed was simply the "worship and service of God." Those words, in England, without more, are deemed to create a trust for the established religion. Yet, the proof having clearly established that the purpose of the trust was the maintenance of dissenting doctrines, the court decreed that purpose to be carried into execution, and would not permit its frustration in the slightest degree. And a similar ruling was made in the case of Kiniskem vs. The Lutheran Churches, etc., 1 Sandf. Chy., 439.

No doubt is entertained that the gift under consideration is a charity, and falls within the meaning of the rules of chancery. (2 Sto. Eq. Jur., § 1164, and cases cited.) And although in consequence of the non-incorporation of the church for whose benefit the grant was made, there was no one *in esse*, at the time of making the donation, capable of being the recipient of the trust; yet the use being a charitable one, a court of equity, having ascertained the intent of the grantor, will not allow the grant on that account to fail, but will see to its effectuation. (2 Sto. Eq. Jur., § 1165-6, and cases cited; Potter vs. Chapin, 6 Paige, 639, and cases cited; St. Louis County Court vs. Griswold, 58 Mo., 175.)

In conclusion, the plaintiffs were clearly entitled to the relief sought. And, under the circumstances of the case, it was the only measure of complete and effectual redress to which they could properly resort.

The judgment rendered on behalf of the defendants is reversed, and an appropriate decree, in conformity to this opinion, will be entered here, vesting the title to the property in dispute in the plaintiffs, as trustees of the Evangelical Lutheran Trinity Church, and perpetually enjoining and restraining defendants from further infraction of their rights.

Judge Vories absent; Judge Hough not sitting; the other judges concur.