In the Matter of the Estate of FRANK L. HALL, FIDELITY NATIONAL BANK & TRUST COMPANY of Kansas City, a Corporation, Executor and Trustee, Appellant, v. R. R. NACY, State Treasurer.— 85 S. W. (2d) 621.

Court en Banc, July 30, 1935.

*Justin D. Bowersock* and *John C. Meredith* for Fidelity National Bank & Trust Company and DePauw University.

*Roy McKittrick*, Attorney General, *John W. Hoffman, Jr.*, and *Charles M. Howell, Jr.*, Assistant Attorneys General, *M. E. Casey*, *Spurgeon L. Smithson, Manuel H. Davis* and *George W. Meyer* for respondent.

*John G. Madden, amicus curiae.*

GANTT, J.—Appellants state the facts as follows: "Frank L. Hall, a resident of Kansas City, Missouri, died testate on May 18, 1929, leaving a large estate. He was a graduate of DePauw University, and for fifteen years had been a member of its board of trustees.

"In his will he named the Fidelity National Bank and Trust Company of Kansas City executor of his estate, and, after certain bequests not involved herein, devised and bequeathed all of his property, real, personal and mixed, to said Fidelity National Bank and Trust Company in trust for the following purposes: the income from $50,000 to be paid to his brother, J. Chalmers Hall, during his life; the income from $25,000 to his nephew, Barton Hall, during his life; the income from $60,000 to certain charitable institutions of Kansas City, Missouri; and all the rest and residue of his estate to be held in trust by the trustee, and the net income from the same to be paid annually to DePauw University of Greencastle, Indiana.

"An appraiser was appointed by the probate court, who, after a hearing, filed his report appraising the estate and computing a tax thereon, including therein a tax of $282,094.03, assessed against the bequest to DePauw University. . . .

"Exceptions were duly filed to the report of the appraiser by

the Fidelity National Bank and Trust Company, as executor of said estate, on the ground that the interest of DePauw University was exempted from the payment of an inheritance tax. Exceptions were also duly filed by DePauw University on the same ground and on the further ground that the probate court had no jurisdiction to try that question, under the applicable sections of the United States Constitution and of the State Constitution, to-wit: the Fourteenth Amendment to the Constitution of the United States, and Article 2, Section 30 of the Constitution of the State of Missouri.

"The matter was heard in the probate court, and the report of the appraiser was approved and a tax against the bequest to DePauw University was assessed by that court. The executor and trustee and DePauw University all appealed to the circuit court. DePauw University filed a plea to the jurisdiction based upon the constitutional provisions above referred to. After a hearing, the circuit court overruled the plea to the jurisdiction, affirmed the judgment of the probate court and assessed a tax of $282,097.03 against the interest of DePauw University, from which judgment this appeal has been duly prosecuted."

I. They contend that the property transferred to the university is exempt under the Inheritance Tax Law.

In 1895 a law was enacted provided for a collateral inheritance tax. [Laws 1895, pp. 278-81.] It was repealed in 1899 and another law enacted for such a tax. [Laws 1899, pp. 328-36.] In 1917 the collateral inheritance tax was repealed and another law enacted providing an inheritance tax. [Laws 1917, pp. 114-17-26.] In 1919 the sections of the Law of 1917 providing for exemptions were amended. [Laws 1919, pp. 722-3.] In 1921 said sections were repealed and re-enacted without material changes. [Laws 1921, pp. 115-16-23.] They are now Sections 575 and 602, Revised Statutes 1929. It is provided in Section 575 as follows:

"The following shall be exempt from taxes provided for in this article: All transfers of property or any beneficial interest therein to be used, and actually used solely for county, city, town or municipal purposes, or for religious, charitable, or educational purposes in this state whether such transfer be made directly or indirectly and said property shall be exempt from the tax where the same descends from a trustee or trustees to other trustee or trustees who hold property for the uses of the above-named institutions."

It is conceded that the phrase "in this State" as used in the above section modifies all the preceding classes of beneficiaries and not only limits exemptions to religious, charitable and educational purposes in this State, but also limits exemptions to counties, cities, towns and municipal purposes in this State. Under this section it is the public policy to only exempt transfers of property for use in this State.

Even so, they contend that the property is exempt under Section 602. To sustain the contention, they invoke rules of statutory construction as follows:

(a) "The intention of the Legislature, as expressed in the act, controls the construction of the statute."

(b) "Some office or function must be ascribed to each clause in the statute."

(c) "The maxim, *ut res valeat magis quam poreat.*"

(d) "The maxim, *expressio unius est exclusio alterius.*"

(e) "When the Legislature amends a statute or enacts a new one differing in essential details, it is presumed to have known the prior state of the law and to have intended to make and made some change in the prior law."

(f) "In cases of doubt and ambiguity the construction placed upon a statute by the administrative officials over a long period of time will not be disregarded by the court except for cogent reasons."

In this connection they tender the intent of the author of the section as tending to show the intent of the Legislature in the enactment of the section. The invocation of said rules is an admission that Section 602 is ambiguous. If it is ambiguous, the exemption must be disallowed for reasons as follows:

The Collateral Inheritance Tax Law of 1899 (Laws 1899, pp. 328-336) allowed exemptions as follows: "Except property conveyed for some educational, charitable or religious purposes exclusively. . . ." In ruling a contention for exemption under said law, we said:

". . . the general doctrine seems to be that prima facie the law should be held to have reference to persons and things within the territorial jurisdiction of the body enacting it, unless it clearly appears that another and different purpose should be gathered from the act itself. Presumptively the lawmaking power is acting in the interest of persons and things within the State. Presumptively the lawmakers in this case were looking after the interests of Missouri, and not legislating for charities in other states, and especially is this so when they were unloosing our own purse strings by this exemption clause. It means, if given the construction urged by the respondent, that a Missouri lawmaking body was releasing its hold upon a source of revenue for charities outside of the State. To give it that construction, would in effect be to say that the lawmaking body was taking Missouri money to support foreign charities." [In re Estate of Quirk, 257 Mo. 422, l. c. 434, 165 S. W. 1062.]

The ruling in the Quirk case is not challenged by appellants. It is supported by the great weight of authority. [People ex rel. Baldwin v. Jessamine Withers Home, 34 A. L. R. 628, l. c. 681.] The rule also is stated as follows:

"It has been contended that the exemption of charitable institu-

tions from inheritance taxation applies to such institutions, regardless of their location within or without the state granting the exemption, for, it is argued, the exemption is in recognition of the beneficent purpose of these institutions, and, inasmuch as the purpose is common to them all, wherever located, the exemption should be universal. But the courts have not yielded to this argument. They have held, with unanimity, it is believed, that, in the absence of any language plainly indicative of a different intent, the Legislature must be deemed to have made the exception for the benefit of its own institutions only, and that foreign corporations, or institutions without the state, must pay the inheritance tax, although exempt in the state of their domicile, and although some of their charitable work and enterprise are carried on within the state enforcing payment of the tax." [Ross on Inheritance Taxation, sec. 146, p. 193.]

We now consider Section 602, as follows:

"When any property, benefit or income shall pass to or for the use of any hospital, religious, educational, Bible, missionary, scientific, benevolent or charitable purpose in this state, or to any trustee, association, or corporation, bishop, minister of any church, or religious denomination in this state, to be held and used and actually held and used exclusively for religious, educational, or charitable uses and purposes, whether such transfer be made directly or indirectly, the same shall not be subject to any tax, but this provision shall not apply to any corporation which has a right to make dividends or distribute profits or assets among its members."

The pertinent parts of the section may be separated as follows:

"When any property . . . shall pass to or for the use of any . . . educational . . . purpose in this state. . . ."

"Or to any trustee . . . in this state, to be . . . actually held and used exclusively for . . . educational . . . purposes . . . the same shall not be subject to any tax."

At the time of the enactment of the section, the Legislature knew of the ruling in the Quirk case. In view of said ruling the lawmakers could easily have exempted the transfer in question by inserting the words "without the state" after the word "purposes" in the last clause of the section. But appellants contend that the insertion of the words "in this state" twice in the section, and the omission of said words after the word "purposes" in said clause indicates an intention to exempt said transfer. In so contending they proceed on the theory that absent words of limitation, the presumption is that exemptions are allowed on transfers of property to be used both within and without the State. It was not so ruled in the Quirk case. Appellants cite Sage, Exrs., v. Commonwealth, 196 Ky. 257, 244 S. W. 799, as sustaining the contention. In that case the question was ruled on a construction of the statute. The courts of Kentucky do not approve the rule announced in the Quirk case.

The section under consideration is ambiguous. It is not a question of construing the section. It is a question of whether or not the transfer is clearly exempted by the section. We find no word or words therein clearly providing for an exemption of the transfer in question.

II. They next contend that due process of law was denied because the probate judge who assessed the tax and determined incidental questions is allowed two and one-half per cent of the amount of the tax assessed as compensation for their services. In other words, they claim that the performance of said services by a judge so interested is a denial of due process.

Under the act the probate judge is the assessor. He appoints an appraiser to value the property transferred. The amount of the tax is determined by the judge after due notice to interested parties, who may file exceptions to the report of the appraiser. The exceptions are determined by the judge in a summary manner, after which anyone aggrieved may appeal to the circuit court. [Sec. 585, R. S. 1929.]

It is not contended that judges of the circuit courts are interested in the assessment of the tax. In Pittsburgh, etc., Ry. v. Bd. of Pub. Works, 172 U. S. 32, l. c. 45, it was ruled that "in matters of taxation, it is sufficient that the party assessed should have an opportunity to be heard, either before a judicial tribunal, or before a board of assessment, at some stage of the proceeding." We think that all persons interested are accorded due process by the provision for a hearing of the cause in the circuit court. [Sec. 292, R. S. 1929.]

Furthermore, the assessment of taxes is an administrative act. In performing that act the assessor must determine in the first instance if the property is subject to taxation. Usually he is paid a fee on assessments. The assessments so made are not a denial of due process. Of course, provision is made for appeal to a board or court for determination of the rights of the parties.

III. They next contend that the circuit court should have tried the case "anew" by appointing its own appraiser and determining the question of assessment as in the first instance.

The act contemplates no such proceeding. On allowance of the appeal from the ruling of the probate court on exceptions to the report of the appraiser, the clerk of said court transmits to the clerk of the circuit court the original papers and a certified transcript of the record and proceedings relating to the case. [Sec. 291, R. S. 1929.] Upon the filing of the papers and transcript in the office of the clerk of the circuit court, said court acquires jurisdiction of the cause and tries the same "anew" without consideration of the proceedings had before the probate court. [Sec. 292, R. S. 1929.]

The cause in the circuit court consists of issues joined on exceptions filed to the report of the appraiser. They are the only issues for trial "anew" in the circuit court.

On the trial of this case in the circuit court the executor's inventory and appraisement, the appraiser's report, and the order of the probate judge approving the same were in evidence. This was evidence tending to show the value of the estate. Furthermore, appellants did not except before the probate judge to the valuation of the assets of the estate, nor to the computation of the tax. Indeed, the exceptions only presented the questions of exemption and due process of law. In the trial court only those questions were presented for determination. The contention must be overruled.

The judgment should be affirmed. It is so ordered. All concur.