Madge **CARLOCK**, Clifford Quisenberry, Martin P. Cutting, Helen Carlock Schwartz, Fred M. Carlock, Clinton Carlock, Faye Martin Guignon, Phillip S. Martin, Dickinson P. Martin, Patrick H. Ryan, Madeline Ryan Classen, Doris E. Ryan, Joan Ryan Folkes and James Ryan, Appellants,

v.

**LADIES CEMETERY ASSOCIATION**, a Corporation, Ruth Schmidt, Julia Reinmiller, Hazel Phillips, Neva Colaw, Hazel Miller, Anna Brandt, Jennie Hoblett, Grace Miller, Madline Sumner, Maude Rogers, and Hazel Gilbert, Appellants-Respondents,

The City of Atlanta, Illinois, Respondent.

No. 46120.

Supreme Court of Missouri.

Division No. 2.

Oct. 13, 1958.

Motion for Rehearing or to Transfer to Court en Banc Denied Nov. 10, 1958.

Von Mayes, Caruthersville, Bradley & Noble, Kennett, Francis A. Casserly, St. Louis, for plaintiffs-appellants.

Harold F. Trapp, Lincoln, Ill., McHaney & McHaney, Flake L. McHaney, William H. Billings, Kennett, for appellants-respondents.

BOHLING, Commissioner.

Madge Carlock and other collateral heirs, being the sole surviving heirs at law of C. D. Martin, deceased, sued the Ladies Cemetery Association of Atlanta, Illinois, an Illinois corporation, and Frances G. Goodman, James C. Gilliam, Sr., and James C. Gilliam, Jr., to quiet and determine title to described real estate, of a present value of $72,500, in Pemiscot County, Missouri, devised by said C. D. Martin to "the Atlanta, Illinois, Cemetery." The cause was transferred to Butler County upon a change of venue. Certain lot owners of said Cemetery, Ruth Schmidt et al. (on behalf of themselves and others similarly situated), and the City of Atlanta, Illinois, were permitted to intervene as parties defendant. No issue is raised respecting the sufficiency of any pleadings.

Briefly and so far as essential to plaintiffs' appeal, the court held the devise a valid public charitable trust to defendant Atlanta, Illinois, a municipal corporation, subject to testator's widow's life interest, for the benefit of its cemetery; found that said City had delegated its municipal functions relating to said cemetery to defendant Ladies Cemetery Association of Atlanta, Illinois, a nonprofit corporation; quieted the title to said real estate in said City of Atlanta, Illinois, and said Ladies Cemetery Association of Atlanta, Illinois, and, said corporations being incapable of taking legal title to real estate in Missouri, the court appointed H. K. Wangelin, an attorney of Butler County, Missouri, trustee to sell said land, to report and, upon approval, to deliver the net proceeds to said City and said Ladies Cemetery Association to be held for the use and benefit of said cemetery, and outlined the procedure for said trustee to follow.

Plaintiffs appealed from the court's decree. Defendants Ladies Cemetery Association and the intervening lot owners (referred to herein, unless otherwise indicated, as defendants) also appealed, having, in a motion for new trial, sought to modify the decree to name said Ladies Cemetery Association or said City of Atlanta as trustee.

Plaintiffs say they, as heirs at law, own this real estate; that the "Atlanta, Illinois, Cemetery" is a tract of land, is not a legal entity, is incapable of holding title to this land; and that the devise is void and unenforceable.

The defendants contend C. D. Martin intended to create a charitable trust for the use of all having a beneficial interest in the Atlanta, Illinois, Cemetery, and the decree of the court was for the right parties.

C. D. Martin, the common source of title, died March 2, 1945, at the age of 78 years. His will, executed May 27, 1932, was duly probated in Pemiscot County, Missouri, April 24, 1945, and, after providing for the payment of his debts and the appointment of his wife as executrix, reads, omitting provisions immaterial here:

"* * * It is also my desire that all my possessions, both real and personal, go to my beloved wife, Daisy G. Martin, and remain her property during her life and that she is to handle, exchange, sell, or dispose of same according to her good judgment, excepting 240 acres hereinafter described by meets [sic] and bounds, which is to go to the Atlanta, Illinois, Cemetery, where several members of my family are buried, the one east of the old Fair Ground tract, however, my wife is to have all net income off this 240 acres during her life and that many acres shall be debited to my heirs at law * * *. It is my desire that during her life she may use the income or principal of any part or all, for personal use and expense and at her death all properties both real and personal remaining not used by her personally shall then be divided equally between her heirs at law and my heirs at law unless she sees fit to will the one-half going to her heirs otherwise or to dispose of it otherwise. From the one-half going to my heirs they will first be debited with the 240 acres having a value of $20,-000.00 (dollars) which is to come from the one-half going to my heirs, said 240 acres shall not be disposed of by my wife during her life and is to go to said cemetery at her death clear of debt or in other words the necessary money shall be used either from income or disposition of property to keep same clear of debt.

"I repeat that it is my desire that my wife shall use every part of my property excepting the 240 acres mentioned for her own personal use and expense if she so desires * * *.

"The 240 acres herein mentioned is hereby described as follows:

"The E½ of the E½, Sec. 5, Town. 16, R 12 E and the E½ of the SE¼, Sec. 32, Town. 17, Range 12 E, Pemiscot County, State of Missouri, containing 240 acres more or less."

The appraised value of C. D. Martin's real estate, approximately 2,481 acres, for inheritance tax purposes, was $186,090, subject to an encumbrance of $14,594.75. The Missouri inheritance tax ($566.07) on this land was paid by defendant Ladies Cemetery Association with funds raised by public subscription in Atlanta, Illinois. See In re Hall's Estate, 337 Mo. 658, 85 S.W.2d 621 [2]. It was not paid by testator's estate or by plaintiffs.

Daisy G. Martin, testator's widow, died testate December 13, 1954. Mr. and Mrs. Martin had no children. Mrs. Martin's heirs and her testamentary beneficiaries, defendants Frances G. Goodman, James C. Gilliam, Sr., and James C. Gilliam, Jr., have not appealed, and the judgment as to their rights is final.

There is only one cemetery in Atlanta, Illinois. It was established by the City in 1857, and was platted. There is no question about the identity of the cemetery.

Illinois Laws 1871, p. 296, entitled "An Act concerning corporations," authorized, among other things, "societies, corporations and associations" to be formed "for any lawful purpose, other than for pecuniary profit" (§ 29); and provided that such corporations "shall in law be capable of taking, purchasing, holding and disposing of real and personal estate, for purposes of their organization * * *" (§ 31).

Defendant Ladies Cemetery Association of Atlanta, Illinois, was organized January 5, 1900, under the not for profit provisions of said Act of 1871 "to obtain land for cemetery purposes and to sell lots for burial purposes and care for such lands and lots and do everything necessary for obtaining, managing and caring for a cemetery." The City of Atlanta, by deeds dated April 7, 1900, February 4, 1903, and August 12, 1911, conveyed its right, title and interest in the cemetery to said Ladies Cemetery Association, with a reverter clause, broadly stated, if said grantee failed to carry out the conditions imposed upon it.

Illinois Laws 1943, p. 264 (Ill.Rev.Stat. 1945, c. 21, § 64), amending § 2 of Ill.Laws 1927, pp. 191–195, among other things, pro-

vided: "Any incorporated cemetery association incorporated not for pecuniary profit, may * * * receive and hold * * * property in perpetual trust pursuant to the provisions of this act. * * * Any person is authorized to * * * devise * * * any * * * property of any kind to the cemetery association, in perpetual trust, for the maintenance, care, repair, upkeep or ornamentation of the cemetery, or any lot or lots, or grave or graves in the cemetery, specified in the instrument making the * * devise * * *. The cemetery association may receive and hold in perpetual trust, any such * * * property so * * * devised * * * to it, and may convert the property * * * into money and shall invest and keep invested the proceeds thereof * * * in safe and secure income bearing investments, including investments in income producing real estate * * *. The principal of the trust fund shall be kept intact and the income arising therefrom shall be perpetually applied for the uses and purposes specified in the instrument making the * * * devise *, * * and for no other purpose." In addition, such funds and the income therefrom were "exempt from taxation and from the operation of all laws of mortmain, and the laws against perpetuities and accumulations." Consult also Ill.Rev.Stats.1945, c. 21, §§ 39, 40; Ill.Laws 1917, p. 219, § 5; Ill.Laws 1927, p. 191, § 6.

The 1943 "General Not for Profit Corporation Act" of Illinois (Ill.Laws 1943, p. 481, § 1, effective January 1, 1944, § 104), (Ill.Rev.Stats.1945, c. 32, §§ 163a–163a100), provided: " 'Not for profit corporation' means a corporation no part of the income of which is distributable to its members, directors or officers; provided, however, that the payment of reasonable compensation for services rendered * * *, as permitted by this Act, shall not be deemed a distribution of income" (Ill.Laws, supra, § 2(c)); and applied (Id., § 3(b)) to not for profit corporations theretofore organized under Ill.Laws 1871, p. 303, §§ 29 to 34, the act under which defendant Ladies

Cemetery Association incorporated for "charitable" purposes (Id., § 4). Said corporations, among other things, had power "to purchase, * * * take by gift, devise or bequest, or otherwise acquire, and to own, hold, use, and otherwise deal in and with any real or personal property, or any interest therein, situated in or out of this State" (Id., § 5(d)).

Defendants offered in evidence the Constitution and By-laws of Ladies Cemetery Association in effect since 1936.

Article I of said Constitution, among other things, provided: The Association shall be composed of ladies owning lots or the female representative of each man owning a lot in the cemetery (§ 2). The purpose of the Association was "to improve and beautify the cemetery grounds under its' management and control" (§ 3). All funds arising from the sale of lots were to be used for the benefit of the cemetery (§ 4). Appropriations from the City Council and donations from friends were to be used for keeping up the cemetery (§ 5).

"Section 6. The Association shall receive by gifts, bequests, or devise, real or personal property or the income or avails of property which shall be conveyed in trust for the improvement, repair, preservation and ornamentation of such lot or lots, vault or vaults, tomb or tombs, or other structure in the cemetery aforesaid, as may be designated by the terms of such gift, bequest or devise and in accordance with such reasonable rules and regulations therefor as shall be made by the Board of Directors. Such funds shall be kept invested in safe, interest-bearing securities, of the character prescribed by Illinois laws as suitable for the investment of Trust Funds by Trustees. The interest derived shall be used for the purposes named by the donor of the principal fund and for no other purpose."

Section 7 provided, inter alia, that said trust funds "shall be vested in the Association," and for the City Council's approval of all investments.

"Section 8. All property received as Trust Funds as aforesaid shall be held by the Association in perpetual trust pursuant to the provisions of an Act of the Legislature of the State of Illinois, in regard to Cemeteries and the creation and management of Trusts for perpetual care of Cemeteries and lots therein approved July 8, 1927, Laws of 1927, page 191." Article VI of the By-laws is to the same effect as said § 8 of the Constitution. (We have hereinbefore quoted the provisions material here of said Ill.Laws 1927, p. 191, as amended by Ill.Laws 1943, p. 264.)

The Ladies Cemetery Association secured authority to do business in Missouri as a foreign not for profit corporation August 8, 1955.

Plaintiffs say that the law in effect at the time of testator's death applies to testator's devise to the Atlanta, Illinois, Cemetery (Simler v. Wilson, 10 Cir., 210 F.2d 99, 104; Newton v. Newton Burial Park, 326 Mo. 901, 34 S.W.2d 118, 121 [7]; 94 C.J.S. Wills § 94, p. 799; 10 Am.Jur. 664, § 108; Fletcher, Corporations, § 3524); and, if the devise is void, they, as the sole surviving heirs of the testator, are entitled to the land and may attack the validity of the devise (Proctor v. Board of Trustees, 225 Mo. 51, 123 S.W. 862, 867, 868; Jones v. Patterson, 271 Mo. 1, 195 S.W. 1004 [6], L.R.A.1917F, 660; Simler v. Wilson, supra).

We have said for construing wills: "The prime rule of construction is that the court, without attempting to make a new will or an equitable distribution of the estate, must confine its endeavors to ascertaining the real intent of the testator. To this end the will must be read from its four corners and effect given to all its plain provisions, provided, of course, they are not in violation of law. If there is doubt as to the proper construction of the will, after its own provisions and language are fully considered, then the court has the right, in aid of construction or interpretation, to consider the circumstances surrounding the testator at the time of making it." First Trust Co. v. Myers, 351 Mo. 899, 174 S.W. 2d 378, 380 [1–3]. See also Burrier v. Jones, 338 Mo. 679, 92 S.W.2d 885, 887; Scullin v. Mercantile-Commerce Bk. & Trs. Co., 361 Mo. 337, 234 S.W.2d 597, 601 [2–9].

Plaintiffs contend defendant Ladies Cemetery Association is a not for profit organization and not a public charity. " 'A charity, in the legal sense, may be more fully defined as a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government.' " Evangelical Lutheran Synod etc. v. Hoehn, 355 Mo. 257, 196 S.W.2d 134, 141 [7], and authorities cited.

■ Plaintiffs direct attention to the fact that the board of directors retain some control over the ownership and use of the lots, trees, walks and monuments in the cemetery, and that charges are made for the lots and for services rendered. If profits arise and are for the benefit of individuals, the institution is not charitable. If the profits are used for the distribution of more charitable benefits, the institution is charitable. There are no restrictions as to race, color or creed on burials in the cemetery. The secretary received $100 a year and the other paid employees were the sexton and his helper. Under the applicable Illinois law (Laws 1943, p. 481; Laws 1927, p. 191, as amended by Laws 1943, p. 264, supra) and the above quoted portions of the Constitution and By-laws of the Ladies Cemetery Association all income received is devoted to the discharge of its authorized public functions. This cemetery is, as plaintiffs admitted at the trial, the public cemetery for the City of Atlanta. We conclude the Ladies Cemetery Association

is a public charity. 2A Bogert, Trusts and Trustees, p. 39, § 365; p. 160, § 377; Scott, Trusts, 2724, § 376; Restatement, Trusts, 1166, § 376, b, c, d; 14 C.J.S. Charities § 2, pp. 421, 423; 10 Am.Jur. 589, § 5, n. 7; Newton v. Newton Burial Park, 326 Mo. 901, 34 S.W.2d 118, 120 [3, 4] (lots were sold at a sum sufficient to pay the expenses of maintaining, improving and beautifying the cemetery loc. cit. (119); Nicholas v. Evangelical Deaconess Home and Hospital, 281 Mo. 182, 219 S.W. 643, 646 [3]; Girls' Industrial Home v. Fritchey, 10 Mo. App. 344, 351.

"Charitable trusts are the favorites of equity and will be construed as valid when possible 'by applying the most liberal rules of which the nature of the case admits,' and such trusts 'are often upheld where private trusts would fail.'" Burrier v. Jones, supra, 92 S.W.2d loc. cit. 887. " 'Of two possible constructions, the court will adopt that one which operates to sustain the trust.'" In re Rahn's Estate, 316 Mo. 492, 291 S.W. 120, 128, 51 A.L.R. 877; 14 C.J.S. Charities § 6, p. 428; 10 Am.Jur. 593, §§ 12, 102.

Plaintiffs contend the devise "is a clear gift." They argue that there are no words of limitation or instruction as to the use of the devise, and cite, as their first three authorities, the three cases mentioned at the beginning of the next three paragraphs.

In National Board of Christian Women's Board of Missions etc. v. Fry, 293 Mo. 399, 239 S.W. 519, 521, 524 [9, 10], testatrix willed " * * * my residence property * * * and my diamond brooch to the National Board of Christian Women's Board of Missions of the Christian Church of the United States of America. , My executor herein shall have the right to dispose of said property as he may think best and use the proceeds of same for home mission work in the United States as they, the said board, may think best * * *." Plaintiff was an Indiana corporation organized to carry on the missionary work of the Christian Church. The court held the devise a clear

gift, there being no words to raise or create a trust, citing Bispham, Equity, § 65, and Jones v. Patterson, 271 Mo. 1, 195 S.W. 1004 [1], L.R.A.1917F, 660, which states it is essential for a charitable trust to "announce a definite subject and a certain object, and that the terms of the trust be sufficiently declared." Bispham, Equity, (10th ed.), § 65 treats of ordinary trusts and recognizes (Ch. V, §§ 116–134) that charitable trusts which would fail if for an individual are upheld in equity. Jones v. Patterson considered a testamentary gift to a trustee "to be used for missionary purposes in whatever field he thinks best to use it, so it is done in the name of my dear Savior and for the salvation of souls" too indefinite for enforcement (195 S.W. 1004 [5]). The court stated (Id., loc. cit. 1005 [4]): "Notwithstanding the permissibility of a general declaration, if the charity does not by its own terms fix itself on a well-defined object or is not susceptible of such interpretation by the courts, but is general and indefinite, it must fail." It has been considered Jones v. Patterson may have misapplied the law. Irwin v. Swinney, D.C., 44 F.2d 172, 183, affirmed Gossett v. Swinney, 8 Cir., 53 F.2d 772, 782; 2A Bogert, Trusts and Trustees, 76, § 371, nn. 79–81.

In Pearson v. First Congregational Church, Mo.App., 106 S.W.2d 941, 948 [14], testatrix' will passed her residuary estate to defendant church, stating: " * * * I request that the ladies of the church may determine how this money may be used." The court, following National Board etc. v. Fry, supra, held the gift to the church was absolute, and the quoted precatory words gave "the ladies of the church" only the privilege of suggesting the use of the funds.

In Altman v. McCutchen, Mo., 210 S.W. 2d 63 [2–5], 64, testator directed his executor to sell his property, discharge his obligations, and expressed the wish that his estate be "devoted to the charitable and other institutions devoted to alleviation of human suffering and want," to which tes-

tator had been devoted, and gave said executor "unlimited discretion to dispose of such proceeds * * * among those charitable institutions in such amount and proportions as he sees fit. * * * " The court held a valid trust was created, the restrictions and limitations being sufficiently specific, definite and certain so that equity could prevent an abuse of the trust by holding the trustee to the general objects stated. Compare Jones v. Patterson, supra, discussed in the Altman case, loc. cit. 66, 67.

We think the Missouri cases of Robinson v. Crutcher, Banc, 1919, 277 Mo. 1, 209 S.W. 104, which supports plaintiffs' position, and Burrier v. Jones, Banc, 1936, 338 Mo. 679, 92 S.W.2d 885, stressed by defendants, bear more directly on the issue for determination. The Burrier case overruled (see Standley v. Allen, 349 Mo. 1115, 163 S.W.2d 1012, loc. cit. 1013, 1014; 4 Scott, Trusts, 2783, § 397) the holding of the majority opinion in the Robinson case. Plaintiffs say the cases are to be distinguished, but, as we read them, the Burrier holding appears to be controlling on the basic issue involved.

In the Robinson case testator gave equal parts of his residuary estate "to the capital of the township school fund of township 54, range 10 in Monroe county, [Missouri]"; "to the capital * * * of the public school fund of Monroe county"; and "to the capital of the public school fund of the state of Missouri and I direct my executor to pay over to the lawful custodians of the several public school funds mentioned * * * the several shares given to said school funds as aforesaid." 209 S.W. loc. cit. 105. In holding the will did not, expressly or by implication, create a trust (Id., loc. cit. 107), the court considered that the testator had made direct gifts to the capital of the school funds as the donees (Id., at page 106 [4]); that said donees had within the meaning of the law no legal entity ([10]); that, notwithstanding testator's direction to his executor to pay over the share given to each fund to the lawful

custodian of such fund, it would be necessary to write into the will the names of the donees which would be a making instead of a construing of the will ([5, 9]); and that no trust was created because of the failure to designate a trustee capable of taking ([4]).

The residuary clause of the will in the Burrier case read: "2nd. I give devise and bequeath the remaining part of my estate both real and personal to the Macon County, Mo., school funds.". (92 S.W.2d loc. cit. 886.) Court en Banc, in a unanimous opinion (Id., loc. cit. 892), adopted and applied (Id., loc. cit. 889) the dissenting opinion in the Robinson case, reading in part (209 S.W. loc. cit. 107): "* * * there has been a clear separation of the legal estate from the beneficial enjoyment or equitable estate. By the terms of the will the legal estate in the property devised or bequeathed * * * becomes immediately vested in the statutory custodian of the respective school funds, and the equitable title or beneficial enjoyment thereof is vested in the persons who by statutory law become now, or are hereafter, entitled to receive the benefits from the respective school funds.

"The terms upon which the trust thus established is to be administered are to be found in the statutory law of the state which definitely and accurately prescribes the manner of applying the uses to which such funds may be put. Under such conditions the statutes * * * are as much a part of the will as if they had been literally copied into the same." Missouri counties, then and now, have power, among others, to act as trustees for charitable uses through the county courts. Consult §§ 12127, 12128, 12129, R.S.1929, now Sections 456.090, 456.100, 456.110. (Unless otherwise indicated, statutory references are to RSMo 1949, V.A.M.S.)

Burrier v. Jones, 92 S.W.2d loc. cit 888 discusses the reliance of the majority opinion (by the writer of Jones v. Patterson, supra) in Robinson v. Crutcher, 209 S.W.

loc. cit. 105 on Doan v. Vestry etc., 103 Md. 662, 64 A. 314, 7 L.R.A.,N.S., 1119, 115 Am. St.Rep. 379. The change effected by Maryland Laws 1931, pp. 1143, 1144, on charitable uses in Maryland is indicated in Fletcher v. Safe Deposit & Trust Co., 193 Md. 400, 67 A.2d 386, 393; Reisig v. Associated Jewish Charities, 182 Md. 432, 34 A.2d 842, 846; Scott, Trusts, § 348.3. See Chambers v. City of St. Louis, 29 Mo. 543, 583.

Burrier v. Jones, 92 S.W.2d loc. cit. 891, cites cases from other states supporting its holding. Among additional cases from other states upholding gifts as testamentary trusts for the benefit of the named charitable institutions or for the benefit of the inmates thereof against contentions to the effect that the gift was to a nonlegal entity incapable of taking, holding and administering the gift; was to an organization that was not a charity; and that no intent of a charitable trust was to be implied from the wording of the will are: In re McDole's Estate, 215 Cal. 328, 10 P.2d 75, 76 ("to the Stubblefield Home for the Aged, at Walla Walla, Washington"); In re Moeller's Estate, 199 Cal. 705, 251 P. 311, 312, 313 [5] ("to Mount Mellish Union Workhouse where I was take care of when i was young and helpless in the Poor House Queens county, Ireland"); Meeker v. Lawrence, 203 Iowa 409, 212 N.W. 688 ("to the Union Cemetery owned by the Ladies Cemetery Association, of Union, Iowa"); Winslow v. Cummings, 3 Cush. 358, 359, 366, 57 Mass. 358 ("To the Marine Bible Society"); First Nat. Bank & Trust Co. of Summit v. Board of Chosen Freeholders, 123 N.J.Eq. 415, 198 A. 292 ("to Bonnie Burn Sanitarium, Union county, N. J."); In re Calkins' Will, 182 Misc. 44, 43 N.Y.S.2d 15 [1, 2] ("to 'manse fund, Westminster Church of Yonkers'" and "to the Disabled Minister's Fund of the Reformed Church in America").

Defendants say their recovery should be upon the basis of a charitable trust, but claim there is respectable authority for declaring the fee-simple title in the Ladies Cemetery Association or the City of Atlanta, Illinois. Defendants cite no authority wherein a municipality or a not for profit corporation of another state maintaining and operating a public cemetery may take and hold the fee-simple title to land in Missouri; and defendants' motion for new trial does not preserve said issue for appellate review.

The dominant intent of the instant testator was that the beneficial interest of his devise be enjoyed by the lot owners and others interested in the Atlanta, Illinois, Cemetery. He twice restricted the benefit of his gift to the "cemetery," expressly stating the land "is to go to the Atlanta, Illinois, Cemetery, where several members of my family are buried," and "said 240 acres shall not be disposed of by my wife during her life and is to go to said cemetery at her death clear of debt." Compare the gift to "Macon County, Mo., school funds" held to create a valid trust in the Burrier case, 92 S.W.2d loc. cit. 886, 892.

No particular words, not even "trust" or "trustee," are required to create a trust for charitable purposes. Ramsey v. City of Brookfield, 361 Mo. 857, 237 S.W.2d 143 [1]; Burrier v. Jones, supra, 92 S.W.2d loc. cit. 888 [8–10]; In re Rahn's Estate, 316 Mo. 492, 291 S.W. 120 [2]. " 'When the intent of its maker is discovered, the will is solved, unless that intent runs counter to an inflexible rule of law or public policy.' " Scullin v. Mercantile-Commerce Bk. & Trs. Co., 361 Mo. 337, 234 S.W.2d 597, 601 [3].

Chapter 352, RSMo 1949, V.A.M.S., relating to religious and charitable associations, provides that: " * * * any association formed to provide or maintain a cemetery * * * may be created a body corporate and politic by complying with sections 352.010 and 352.060" thereof (§ 352.020, formerly § 5439, R.S.1939); and also: "No association, society or company formed * * * for pecuniary profit in any form * * * shall be incorporated under this chapter * * *" (§ 352.050, formerly § 5444, R.S.1939).

Laws 1919, p. 181, now § 214.140, applicable to public and private cemeteries, provides that any devisor may devise in trust any real or personal property for the benefit of any public or private cemetery in this state; and any corporation authorized to qualify as trustee is empowered to hold such property under the terms of any such devise.

■ The Ladies Cemetery Association was authorized under Illinois law to receive and hold property, real, personal and mixed, in trust for the benefit of the cemetery (Ill. Laws 1943, p. 264, supra). This was not a power denied to like Missouri corporations under Missouri law (§ 214.140, supra), as was the situation in Proctor v. Board of Trustees, 225 Mo. 51, 123 S.W. 862, 866(4). Testator's devise to the Atlanta, Illinois, Cemetery does not run counter to any inflexible rule of law or public policy of Missouri and is sufficiently definite to permit of its guardianship by courts of equity. It was effective as a valid charitable trust and the right, title and interest of those having an interest in the Atlanta, Illinois, Cemetery in and to the land devised is superior to that of plaintiffs as testator's heirs at law.

Buckley v. Monck, Mo., 187 S.W. 31, 33, states that where no trustee capable of taking is appointed in a charitable devise the heir at law or executor, as the case may be, holds the legal title to the property subject to the use.

■ A court of equity will appoint a trustee for a charitable use, otherwise valid, if the trustor fails to name a trustee, or the trustee be erroneously or uncertainly designated, or is incapable of taking and acting as trustee. Newton v. Newton Burial Park, 326 Mo. 901, 34 S.W.2d 118, 121 [8, 9]; Buckley v. Monck, Mo., supra; Schmidt v. Hess, 60 Mo. 591, 595; Glidewell v. Glidewell, 360 Mo. 713, 230 S.W.2d 752, 756 [4, 5]; 14 C.J.S. Charities § 27, p. 460; 10 Am.Jur. 603, §§ 27, 113; Scott, Trusts, 2782, 2783, § 397; 2 Bogert, Trusts and Trustees, 475, § 328.

Plaintiffs developed and defendants admitted in the course of the trial that the Ladies Cemetery Association had contracted to sell said land for $72,500. The court appointed H. K. Wangelin of Butler County, Missouri, trustee to sell said land, to report, and, upon approval, to execute a deed as such trustee; and, following allowances of expenses and costs by the court, said trustee was to be directed to pay the balance to said City of Atlanta and said Ladies Cemetery Association; and said City of Atlanta and said Ladies Cemetery Association were directed to establish an "Atlanta, Illinois, Cemetery Trust Account" in a depository for the net proceeds of said sale and file proof thereof with said court, said deposit to be used for the benefit, improvement and maintenance of said Atlanta, Illinois, Cemetery, and said City of Atlanta and said Ladies Cemetery Association were to report on January 30th of each year to said court the annual itemized expenditures from said fund and the bank balance on hand.

Defendants say said Ladies Cemetery Association, or, if it cannot act, then said City of Atlanta should be appointed trustee, or, "in any event, the court may appoint whomsoever the court believes to be qualified in order to preserve the charitable trust."

■ Laws 1921, p. 689, § 456.120 at the time of the decree (December 11, 1956), provided that no corporation organized under the laws of any other state shall receive as trustee, or act as trustee of, any real or personal property located in this state under any devise or bequest.

We think we are on safer ground under the record before us and the presentation made in holding, without prejudice, that the trial court appoint a qualified Missouri trustee to take, hold, invest and administer the proceeds of the sale of the land devised under the directions of the court in accordance with the applicable Illinois law and the Constitution and By-laws of the Ladies Cemetery Association of Atlanta, Illinois, for the use and benefit of the lot owners

and others interested in said cemetery. Perhaps, upon proper proceedings, the situs for the administration of this trust may be transferred to the State of Illinois. Martin v. Haycock, 22 N.J. 1, 123 A.2d 223, 58 A.L.R.2d 1126, and annotation.

The conclusions we have reached on the issues discussed make it unnecessary to consider the other issues presented in the briefs.

The decree is reversed and the cause is remanded with directions to modify the decree to conform hereto.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

STORCKMAN, P. J., EAGER, J., and HUNTER, Special Judge, concur.

LEEDY, J., not sitting.