In the matter of the estate of JOHN J. JONES, deceased.

[Submitted and decided September 12th, 1907.]

The New York Baptist Union for Ministerial Education furnished means of instruction to young men of the Baptist denomination, without reference to residence, who should give satisfactory evidence to their church and to the trustees of the society of their personal piety and of their call to gospel ministry. The Baptist Educational Society of the State of New York furnished means of instruction to young men of the Baptist denomination who gave satisfactory evidence to their church and to the board of trustees of their personal piety and call to preach, and was similarly supported. The American Baptist Home Missionary Society was organized to promote the preaching of the gospel in North America. Its constitution provided for officers and members, and that all money or property contributed and designated for any particular field should be used as appointed or returned to the donors. It had no other purpose than the extension of gospel preaching.—*Held*, that all three were religious institutions not confined in their operations to local or state purposes, but for the general good of the people interested therein, and were therefore exempt from payment of the collateral inheritance tax imposed by the laws of 1898. *P. L. 1898 p. 106.*

---

Application for assessment of the collateral inheritance tax against certain legatees under the will of John J. Jones, deceased. Decree in favor of exemption of certain religious associations.

*Mr. William H. Barricklo,* for the state.

*Mr. Charles L. Corbin,* for the legatees.

BERGEN, VICE-ORDINARY.

The purpose of this proceeding is to have determined the right to impose upon certain legatees, under the last will and testament of John J. Jones, deceased, who was at the time of his death a resident of this state, a collateral inheritance tax. The tax has been assessed through the agency of the comptroller of the state, and the legatees object to the imposition of this tax, and insist that under a supplement, passed in 1898, to the act commonly known as the "Collateral Inheritance Tax act" they are exempt. The supplement exempts from taxation, among other things, all legacies to any bible or tract society or religious institutions, boards of the church or organizations thereof, not confined in their operations and benefactions to local or state purposes, but for the general good of the people interested therein, whether such societies, religious institutions or boards are organized under the laws of this state or incorporated and organized under the laws of some other state. These legatees are the New York Baptist Union for Ministerial Education, the Baptist Educational Society of the State of New York, and the American Baptist Home Mission Society, and the question is whether they or either of them fall within the description of a religious institution, a board of the church or an organization thereof which does not confine its operations and benefactions to local or state purposes, but exercises them for the general good of those interested therein.

The Union for Ministerial Education, by its constitution, defines its operations and benefactions as follows:

"The object shall be to furnish means of instruction to such young men of the Baptist denomination as shall give satisfactory evidence to the church of which they are members, and to the trustees of the society, of their personal piety and their call to the gospel ministry."

The members of the union shall be those who are members of any Baptist church, paying at least the sum of $2 yearly or life

members by paying the sum of $20 at one time or honorary members by paying the sum of $50, and the number of delegates to be sent by any Baptist church regularly contributing to the union is limited to one. It would seem according to the definition given to this union by its constitution that it is a religious institution. It manifestly has for its purpose only the furnishing of means for the instruction of young men of the Baptist denomination who shall give satisfactory evidence to the church of which they are members, and to the trustees, of their personal piety and of their call to the gospel ministry. Clearly that means that the union will assist in educating for the ministry such young men as are able to satisfy the church from which they come, and the trustees, that they are religiously inclined and intend to minister to the advancement of the cause of Christianity. How I can say that the purpose, as indicated by this constitution, is otherwise than the establishment of a religious institution is difficult for me to see. I am quite certain, on this branch of the case, that this union is a religious institution.

The next legatee is the Baptist Education Society of the State of New York, which in its constitution states its object to be

"to furnish the means of instruction to such young men of the Baptist denomination who give satisfactory evidence to the church of which they are members, and to the board of trustees, of their personal piety and their call to the gospel ministry."

What I have said on this subject with reference to the ministerial union applies with equal force to this legatee.

The remaining legatee states in its constitution that "The object of this society shall be to promote the preaching of the gospel in North America." And it further provides for offices and members, and that all money or property contributed and designated for any particular field shall be used as appointed or returned to the donors or their lawful agents. This society is not only organized for but has no other purpose than the extension of gospel preaching. The Baptist denomination is a religious denomination and the objects of this society is to advance the cause of Christianity according to the doctrines of

the Baptist church; therefore, all three of these societies, in my opinion, are religious institutions. I also find that they are boards or organizations of the Baptist church and that their operations and benefactions are not local but general. They are sustained by the Baptist churches throughout, at least, the northern section of the United States. There is evidence to show that there are three different branches of the Baptist church, the southern, the northern and the negro or African branch, but this division is only arbitrary, and the distinction has grown up because of the character of the government of the church, which is that each church is an independent organization. But all of these institutions, though independent of each other, are supported by the Baptist denomination; contributions are taken up in a great many of these churches and funds are sent to these three legatees to be used by the trustees of the institutions they represent for the advancement of Christianity. Of course, the contributions are voluntary and not compulsory, but that method applies to every denomination. The board of foreign missions of the Presbyterian and Reformed churches are supported by contributions or by legacies entirely voluntary. These legatees being religious institutions and, as I have determined, organizations of the Baptist church, the next question is, has or does either of these confine their operations and benefactions to local or state purposes? It has been argued here very strenuously that because the contributions made by at least two of these legatees are largely devoted to the education of young men for the ministry, and that the money has been given or turned over almost entirely to special educational institutions, therefore, their operations and benefactions have been local. As I interpret this evidence these two institutions, the ministerial union and the educational society, are distinct corporations, not only as between themselves, but they have no corporate connection with the college or school to which they have contributed for the religious education of men, to train them to advance the growth of belief in Christianity. It appears by the evidence that the benefits that they have conferred upon the objects of their benefactions are not limited to students of any particular locality. They are taken

from all parts of the country and from foreign lands; any man, no matter where he comes from, who will agree to serve as a Baptist minister, after he has been educated, and to preach the gospel, is given assistance to prepare him for his religious work. They may not do it in full, they may not have sufficient income to pay him enough for the completion of his education, but if they do the best they can, if they take the money that is contributed and divide it as equally as they can between the applicants, I take it they are conferring their benefactions generally and that the operations of the institution and the conferring of their benefactions is not local but for the general good of the people interested therein. The money is given by the Baptist church for the purpose of educating young men to advance religious doctrines of the Baptist church, and is disbursed by these legatees for that purpose.

With regard to the board of missions, there is no doubt but it falls within the definition of the act. This is really a board of missions, and it is an institution clearly within the exemptions provided by the act. I am, therefore, of the opinion that all of these three legatees fall within the exemption of the act of 1898 and are entitled to be relieved from the payment of the collateral inheritance tax.