KREIDER, P. J.,
— Plaintiffs are five Pennsylvania nonprofit corporations operating Christian Schools located in Harrisburg, Lancaster, York, Chester and Northeast Philadelphia. They have brought this action in equity against the Pennsylvania Department of Public Instruction and the State Board of Private Academic Schools to prevent defendants from applying to them the licensing provisions of the Private Academic Schools Act of June 25, 1947, P. L. 951, as last amended August 13,1963, P. L. 695, sec 1, 24 PS §§2731,2732.
An answer to the complaint was filed by defendants and thereafter the parties entered into a stipulation of facts. No oral testimony was taken. The basic issue to be decided is whether plaintiffs are required to apply for a State license to operate their schools or whether they are exempt by reason of section 2 of the said act which declares that:
“The provisions of this act shall not apply to . . . schools or classes owned and operated by or under the authority of bona fide religious institutions . . . ”
Plaintiffs contend that their Protestant schools, like the Catholic and Hebrew parochial schools, are oper *432 ated by and under the authority of bona fide religious institutions. Defendants assert plaintiffs are not “bona fide religious institutions” as contemplated by the act.
The present proceeding was precipitated by a letter dated July 25, 1968, sent by Dr. David H. Kurtzman, Superintendent of Public Instruction of the Commonwealth of Pennsylvania, to the principal of the Northeast Christian Day School of Philadelphia advising him that the failure of Senate Bill No. 1311 to be enacted into law necessitated proper enforcement of the 1947 Act. The letter further stated:
“Accordingly, any private school which has not been granted an exemption, or that has not been licensed by the State Board of Private Academic Schools, is operating in violation of the law.
“Superintendents of public school districts wherein such schools are operating are being advised to require registration of all resident students in their district who are in attendance in said nonlicensed or nonexempt school.
“It is therefore imperative that your school immediately make application for exemption and, if same is not allowed, then an application for licensure is compulsory.
“Failure to comply will necessitate the institution of legal proceedings to enforce the provisions of the above Act, as well as the institution of procedures by the District Superintendents of the public schools involved to enforce compliance with the Public School Code.”
It should be noted that 13 years before the superintendent’s letter was written, the State Board of Private Academic Schools, acting through Richard A. Rosenberry, Director, Bureau of School Licensing, advised one of the present plaintiffs by letter dated November 16, 1955 that
“. . . on October 5, 1955, the State Board of Private Academic Schools approved the application from the *433 Christian Day School of Greater Harrisburg, 22nd and Swatara Streets, Harrisburg, for exemption from the provisions of the Act of June 25, 1947, P. L. 951, as amended. Therefore, the provisions of the Act, supra, are not applicable to the said school, and the Christian School Association of Greater Harrisburg is not required to apply for and obtain a private academic school license.
“The State Board’s action in this matter was based on evidence that the applicant for exemption is owned and operated by a bonafide religious institution, the Christian School Association of Greater Harrisburg.”
Defendants admit this in Paragraph 11 of their Answer,
“. . . averring, however, that said letter of November 26, 1955 as averred by the Plaintiffs was countermanded by a letter issued by the State Board of Private Academic Schools to the Delaware County Christian School, dated May 1,1957, a copy whereof is hereto attached, marked Exhibit A and made a part hereof.”
The relevant part of the countermanding letter of May 1, 1957, signed by the Secretary, State Board, Private Academic Schools, is as follows:
“At a meeting on March 26, 1957, the Attorney General rendered an opinion to the State Board of Private Academic Schools that on the basis of the facts submitted, the Delaware County Christian School is not entitled to exemption from the Act of June 25, 1947, Public Law 951; as amended, for the reason that it does not comply with the provisions for exemption as outlined in Section 2 of said Act.”
QUESTIONS INVOLVED
I. Are plaintiffs bona fide religious institutions?
II. Are plaintiffs required to file with the State board an application for exemption or licensure?
From the facts admitted in the pleadings, the stipulation of facts and the exhibits we make the following
*434 FINDINGS OF FACT
1. Plaintiffs are nonprofit corporations organized and existing under the laws of the Commonwealth of Pennsylvania with charters issued by the Court of Common Pleas in their respective counties.
2. Defendants are the Commonwealth of Pennsylvania, Department of Public Instruction and the State Board of Private Academic Schools.
3. The State Board of Private Academic Schools operates under the Act of June 25, 1947, P. L. 951, 24 P.S. §2731, entitled, as amended, “An Act defining and providing for the licensing and regulation of private academic schools; conferring powers and imposing duties on the State Board of Private Academic Schools; and imposing penalties,” and further providing for the inapplicability of the act.
4. The act directs that a “ ‘Private academic school’ or ‘school’ shall mean a school maintained, or classes conducted, for the purpose of offering instruction for a consideration, profit or tuition, to five* or more pupils at one and the same time, or to twenty-five or more pupils during any school year, . . . except . . . any type of private school which is nonacademic in character.”
The act also provides in section 2 that it shall not apply to colleges or universities, schools maintained or classes conducted by employers for their own employes where no fee or tuition is charged, schools or classes owned and operated by or under the authority of bona fide religious institutions and various other types of schools.
5. The purposes of the plaintiff-Christian School Associations are outlined in their charters and the relevant provisions thereof are set forth in exhibits A, B, C, D and E of the complaint. In substance, each charter provides that the school children shall receive *435 instruction in all subjects normally required to be taught in the public schools in accordance with at least the scholastic standards thereof and also shall receive Biblical instruction and Christian training.
6.The year of organization, student body, teachers and grades taught in the five plaintiff schools are, with allowance for minor variations, as follows:

7. The teaching in the schools conforms to the Christian Protestant Fundamental Biblical Beliefs. They are not directly associated with any particular denomination but are assisted, supported and encouraged by many denominations. The boards, teachers, students and parents represent many different Protestant denominations.
8. In addition to that which is stated in their charters, plaintiffs have set forth their purposes and operation in publicly distributed literature which carries out in practice these purposes and rules. Some of this literature is attached to the stipulation of facts and marked exhibits A, B, Bl, B2, C, Cl, D and E.
9. All schools teach the Bible in all grades; all start school sessions with devotion services, including Bible reading and prayer. In most of the higher grades each class is started with a prayer. Subjects are taught in the light of the Christian doctrine to which the schools are dedicated.
10. With a possible few exceptions, students are admitted to the schools from homes of parents at least one of which is an Evangelical “born again” Christian *436 or from parents who sign an agreement to have their child or children taught the religious doctrine of the schools.
11. All schools teach Bible as a separate course for approximately one-half hour a day, but also approach the teaching of civics, science, music, sports and other subjects from the religious beliefs held by the schools.
12. All teachers are dedicated to the Protestant Christian belief in the Scripture as inspired of God and the Supreme Authority in Faith and Life and are, with the exception of kindergarten teachers, college graduates, some having taught in colleges.
13. All schools teach patriotism, accepting it as a part of the Christian doctrine; have the students pray regularly for those in authority in the government of the Nation, the State and for the local officials, and daily have the students pledge allegiance to the flag of the United States of America.
14. All schools follow legal requirements for attendance for 180 days and cooperate with local and State officials concerning required attendance and absences. They have substantially the same daily hours as public schools.
15. None of plaintiffs’ schools accepts any funds from the Commonwealth for secular or non-religious teaching or for bussing students.
16. The schools are supported largely by tuition paid for each pupil, but none is able to operate on this income alone. All receive donations from individuals and organizations who believe in their purpose and their ability to carry it out.
17. The teaching in these schools and the academic accomplishments of the students attending them compares favorably with the teaching in the public schools and with the accomplishments of students attending the public schools.
*437 18. All plaintiffs’ schools are members of the National Association of Christian Schools, Wheaton, 111., which has a membership of approximately 260 schools. They are also members of the Mid-Atlantic Christian Schools Association. Information concerning the said National Association as stated by its Executive Director is attached to the stipulation of facts and marked exhibit “F.”
19. None of the schools has any racial qualifications for the admission of students. All of the schools have had Negro students and all now have Negro students except Lancaster.
20. The said plaintiffs have refused to file applications for exemption or licensure with the State Board of Private Academic Schools.
21. The Superintendent of Public Instruction has notified plaintiffs that legal proceedings will be brought against them and the parents of the school children unless plaintiffs apply to the State Board of Private Academic Schools for a license or exemption therefrom.
22. If defendants are allowed to proceed with the threatened legal proceedings, plaintiffs will be subject to undue and unnecessary expense and inconvenience in defending an action in a forum whose jurisdiction is questioned and to resist the closing of schools which have been operating for upwards of 20 years.
23. The separate and independent actions threatened against the parents and the students attending these schools could require legal representation for upwards of several hundred parents and their children.
DISCUSSION
I. Are plaintiffs bona fide religious institutions ?
Defendants contend that plaintiffs are not “bona fide religious institutions.” They aver that an examination of plaintiffs’ charters indicates in each instance that the *438 primary purpose is to establish a private school and to give instruction in all subjects normally taught in the public schools, including Biblical instruction and Christian teachings.
In their brief, defendants say:
“In reality, the Charter provisions indicate that their primary purpose is that of school operation. Any religious infiltration in the courses of instruction is secondary and incidental to the primary purpose; to wit, fulfilling the requirements of public school instruction.”
Defendants also contend that further evidence of plaintiffs’ secular purpose is noted in the brochures of the various plaintiff schools.
Defendants concede that “there is no question about their [plaintiffs’] scholastic efforts” but argue that the mere fact that the environment is religious and spiritually uplifting does not alter the fact that the primary purpose is educational “and their operations have been in accordance therewith.”
We cannot agree with these contentions. Our examination of plaintiffs’ charters and brochures convinces us that the primary purpose in establishing these schools was to insure that the school children would receive a Christian education at the hands of Christian instructors who are required to accept, teach and practice Christian Protestant fundamental Biblical beliefs and apply them insofar as possible in their teaching to all the subjects of the curriculum.
For example, the brochure of the Chester Christian School at Brookhaven, Pa., states on its cover: “Pursuit of Excellence Through Christ” and at page 7, “The Christian School uses regular textbooks that are found in the public schools. However, the teacher has the freedom to explain in detail, in accordance with the Bible any area that contradicts or deletes God.”
The Chester charter sets forth that “the instruction shall be in the tenets of evangelical Christianity to the *439 end that the students may grow in grace and in the knowledge of God through our Lord and Saviour Jesus Christ.” Their charter also sets forth a statement of faith setting forth their belief in the Bible as the infallible authoritative Word of God. It expresses belief in the deity of Jesus Christ, in His virgin birth, His sinless life, His miracles, His bodily resurrection and His ascension, and in His return to power and glory.
The York charter provides that the “instruction shall be in agreement with Biblical Christian Doctrine in order that the students may be better equipped to lead Christ-centered. lives.” The Harrisburg charter provides that instruction shall include Biblical instruction and Christian teachings. The Lancaster charter provides that instruction shall be based “on the Word of God as revealed in the Holy Scriptures.”
The Northeast Christian Day School of Philadelphia charter provides:
“The purpose of this corporation shall be to conduct and maintain a private Christian Day School in the Northeastern section of Philadelphia, Pennsylvania, to provide instruction in all subjects required by the Department of Public Instruction of Pennsylvania, the total curriculum to be presented in a God-centered and distinctively Protestant, Christian and Evangelical manner (Protestant, as contrasted to Roman Catholic and Jewish; Christian as contrasted to secular; Evangelical as contrasted to liberal or modernistic). In addition to the teaching of the regular subjects from the above viewpoint, instruction shall also be given directly from the Bible so that the children may grow in grace and in the knowledge of the Word of God.”
In Funk Estate, 353 Pa. 321, 322-23 (1946), the Supreme Court stated that “a ‘cause’ is a principle or objective to be achieved; an ‘institution’ is an agency designed to implement a cause and carry it into effect ...”
*440 Our Superior Court in Commonwealth v. Schuman, 125 Pa. Superior Ct. 62 (1937), held that a corporation, Watch Tower Bible and Tract Society, organized for the dissemination of Bible truths in various languages by means of the publication of tracts, pamphlets, papers and other religious documents was a “religious organization.” The court said (page 67) that “The Commonwealth’s evidence shows beyond a question . . . these parties were engaged not primarily in vending books, but in promoting their religious tenets.” In the present case plaintiffs are engaged not primarily in secular education but in teaching their religious tenets and applying them to the curriculum in its entirety, although the requirements of the State in regard to secular education are conceded to be fully complied with.
It is noteworthy that in situations somewhat similar to the one now before us, the courts of Washington, Ohio and New Jersey have held organizations such as plaintiffs’ to be “religious establishments,” “religious organizations,” and “religious institutions.” The Washington case was quite similar factually to the case at bar in that the school was owned and operated by a voluntary society known as Sumas Christian School Society, Inc., formed to furnish instruction in religious principles, along with required subjects. See Visser et ux. v. Nooksack Valley School District No. 506, 207 P. 2d 198 (Wash., 1949). In Morgan’s Estate, 180 N.E. 2d 146, 173 Ohio 89 (1962) it was held that the Board of Pensions of the Presbyterian Church, a Pennsylvania nonprofit corporation, was “Ja religious organization” and in Jones’ Estate, 67 Atl. 1035, 73 N. J. Eq. 353 (1907), a similar result was reached as to the New York Baptist Union for Ministerial Education et al. In Prall’s Estate, 79 N.Y.S. 971 (1903), a corporation organized to provide floating and other churches for seamen in the City of New York and to provide suitable clergymen to act as ministers therein, was held to be a religious *441 corporation though its charter had been amended to include a seamen’s boarding house.
The fact that the plaintiffs’ schools are not affiliated with a specific religious denomination or church does not prevent them from being religious institutions. Collins v. Kephart, State Treasurer, 271 Pa. 428 (1921), is cited by plaintiffs and defendants to support their respective views. In that case, the Supreme Court, speaking through Chief Justice Robert von Moschzisker, decided five suits involving article III, sec. 18, of the Pennsylvania Constitution which prohibited State appropriations for charitable, educational or benevolent purposes to any denominational or sectarian institution.
One of the suits decided in Collins v. Kephart, supra, involved the “Jewish Hospital Association of Philadelphia.” There the Supreme Court stated, page 440:
“The last appropriation we must consider is to the Jewish Hospital Association of Philadelphia, a Pennsylvania corporation whose charter contains the following preamble: ‘Since there is no institution now in existence within the State of Pennsylvania under the control of Israelites wherein they can place their sick, and where these can enjoy during their illness all the benefits and consolations of our religion, we, the subscribers and our successors, associate ourselves, etc.’
“The defendant association, which owns the property occupied by, and controls what is popularly known as, the Jewish Hospital, is confined to persons of the ‘Jewish faith’; but neither the chief physician nor the chief nurse is a Jew. The great body of the patients are outside that faith, and none of them is obliged to attend religious ceremonies or worship of any kind. The fact remains, however, that this hospital is a sectarian institution according to the sense in which that term is used in the Constitution.
“The establishment under consideration is one of the *442 noble contributions of the Israelites of Philadelphia to the cause of charity; but it falls within the broad meaning of the term ‘sectarian,’ as that word is understood by the people generally. The Jews are commonly believed to constitute a distinct religious body, or sect, and to all such bodies, whether Christian or otherwise, our organic law forbids the legislature to give recognition by the appropriation of public funds to their charitable, educational or benevolent institutions; hence this appropriation, like the others, must fall.”
To qualify as a “religious institution,” formal affiliation with any particular religious denomination is not required. Those who controlled the Jewish Hospital Association presumably were not all Orthodox or Conservative or Reform Jews. The members were simply of “the Jewish faith.” In Lord’s Day Alliance of Pennsylvania v. United States, 65 F. Supp. 62 (E. Dist. Pa., 1946), the court found the Alliance to be engaged in promoting the reverent observance of the Lord’s Day, commonly called Sunday, in cooperation with different denominations, church groups and other persons and, therefore, exempt from Social Security tax as “a religious organization.”
In the case at bar, plaintiffs likewise have a common religious faith which embraces Christian Protestant fundamentalism and a firm belief in a school educational program that teaches those religious principles. We conclude that plaintiffs are “bona fide religious institutions.”
II. Are the plaintiffs required to file-.with the State board an application for exemption or licensure ?
The act of assembly specifically provides in section 2 of the Act of June 25, 1947, P. L. 951, ás amended, supra, 24 PS §2732, that
“The provisions of this act shall not apply to colleges, or universities . . . schools or classes owned and op *443 erated by or under the authority of bona fide religious institutions, or ... , but such schools may choose to apply for a license and, upon approval and issuance thereof, shall be subject to the provisions of this act.”
Plaintiffs’ counsel strenuously argues that since the act declares that none of its provisions is applicable to bona fide religious institutions, they need not proceed under it to have an exemption granted. In their brief, plaintiffs aver that:
“The position of the Christian Schools is not an unwillingness to be subject to any regulation by the Commonwealth of Pennsylvania. Certainly there are many laws, completely outside the scope of this Act relating to Private Schools, to which they cheerfully comply. However, they protest strongly any attempt, by unreasonable interpretation of the law, to subject them to regulations which do not apply equally to all religious schools.”
The record shows, as above stated, that plaintiffs have fully met the board’s scholastic requirements and have meticulously observed the latter’s regulations relating to attendance, length of the school term and the like. Having thus qualified for exemption, plaintiffs understandably are reluctant to participate in breaking down the wall of separation between church and State as ordained in our Federal and State Constitutions by application for state exemption.
The decisions of our appellate courts sustain plaintiffs’ position. In Commonwealth v. McDermott, 296 Pa. 299 (1929), defendants were indicted for the unlawful sale of articles for charitable purposes without having first obtained a license therefor in the form of a certificate of registration from the State Department of Public Welfare in conformity with the provisions of the Act of May 13,1925, P. L. 644. Defendants attacked the act as unconstitutional because it granted a number of *444 exemptions from its provisions, including fraternal organizations incorporated in Pennsylvania, religious organizations,, colleges, schools, universities, labor unions and community organizations within the Commonwealth, etc. In sustaining the act and its exemptions, the Supreme Court stated, pages 304-05:
“. . . However, the legislature saw fit to exempt a number of organizations from the provisions of the act, for, as we think, wholly good and substantial reasons. The right of the legislature to enact laws containing exemptions has been so long established in this and other jurisdictions . . .
“Release from the obligations of the provisions of the act of the various organizations and institutions specified in section 11 is based on considerations of a most sensible character. It is the duty of the welfare department to scrutinize and investigate the standing and stability of organizations proposing to carry on charitable undertakings. . . Necessarily it must investigate, if it is asked by the organization for registration, as required by the act in question, and the result of the investigation will govern its decision as to whether or not the applicant shall be permitted to proceed with the undertaking. The legislature however recognized the fact that there are many organizations and institutions which engage in charity work, either in whole or in part, as churches, educational bodies, and other associations, of which the general public has a wide and intimate knowledge and in which it has full confidence. With this situation in mind, the lawmakers deemed it quite unnecessary to compel the department of public welfare, which is composed of enlightened persons who would undoubtedly have ample information themselves as to the character of those public bodies, to use their time and labor in gathering information they already possessed. Moreover, to require such institutions to *445 apply for a license and submit to a wholly needless investigation of their plans and purposes would in fact have the specific result of hampering, hindering and delaying their labors, and result in interference for which there would not be even an excuse. The high standing of the organizations released from the license requirement, their known capacity for effective labor in the realms of benevolence, clearly justify the exemption accorded them by the act. Such standing and adequacy may be accounted common knowledge, and undoubtedly was so considered by the legislature as proper ground for relieving them from the force and effect of the statute. We may not assume to question the intent of the legislature in the enactment of legislation founded on good faith and sound reason ...”
To the same effect is Commonwealth v. Schuman, supra, 125 Pa. Superior Ct. 62 (1937). There, defendant was indicted for a violation of the Act of May 13, 1925, P. L. 644, 10 PS §141 supra, which relates to, and regulates, the solicitation of moneys for charitable, religious, benevolent, humane and patriotic organizations. The act provided it should not apply to religious organizations. It was held that such organizations were exempt from any duty to secure a certificate of registration from the Department of Welfare and defendant’s demurrer was sustained.
Accordingly, we state the following
CONCLUSIONS OF LAW
I. The court has jurisdiction of the parties and the subject matter of this case.
II. Plaintiffs are bona fide religious institutions within the meaning of section 2 of the Act of June 25, 1947, P.L. 951, as amended, 24 PS §2732, and, as such, are not subject to the provisions of that act.
*446 III. Plaintiffs are not required to make application for exemption from the provisions of the said Act of 1947, or for the issuance of a license to operate their schools thereunder.
IV. Plaintiffs are entitled to an order enjoining defendants and the Superintendent of Public Instruction of the Commonwealth, their officers, agents and employes, from instituting or causing to be instituted any legal proceedings against plaintiffs or the parents of students attending plaintiffs’ schools or against the students themselves.
DECREE NISI
And now, April 14, 1971, the Pennsylvania Department of Public Instruction, the Superintendent of Public Instruction of the Commonwealth of Pennsylvania and the State Board of Private Academic Schools, their servants, agents and employes and any other person acting on their behalf, are hereby enjoined from
(a) Instituting any legal proceedings against plaintiffs for operating their private academic schools and for declining to apply for State exemption or license to operate the same.
(b) Instructing or permitting District Superintendents of the Public School Districts of the Commonwealth to institute any legal proceedings against the parents of children attending plaintiffs’ schools or against the students themselves under the Public School Code or otherwise.
Defendants and the said Superintendent of Public Instruction are directed to countermand any previous instructions, if issued, to District Superintendents of the Public Schools or to any other persons, ordering legal proceedings to be brought against parents of students attending plaintiffs’ schools or against the students themselves.
*447 If no exceptions are filed within 20 days after notice of the filing of this adjudication, this decree nisi shall be entered by the prothonotary on praecipe as the final decree.

 Emphasis throughout ours unless otherwise noted.